FIRST STATE BANK OF ABERDEEN v. WILL THUET and Another.[1]

January 23, 1903.

Nos. 13,310—(217).

### Discount of Draft on Consignee.

The defendants, live stock brokers, promised to honor the draft of a cattle buyer, to be drawn on them for $800, if two car loads of cattle were consigned to them. The plaintiff discounted the draft, but only one car load was ever so consigned to the defendants. This fact the plaintiff knew when it discounted the draft. The defendants, without notice, as they claim, that only one car load had been or would be consigned to them, but with such notice, as the plaintiff claims, accepted the consigned property and sold it as such brokers. They realized there-

[1] Reported in 93 N. W. 1.

from a net sum, over and above the charges thereon, which was less than the amount of the draft, but the gross sum received for the property exceeded such amount. They refused to pay anything on the draft. *Held*:

## Conditional Promise.

1. The promise of the defendants was a conditional one, and they are not liable on the draft unless they waived the condition by accepting and selling the property actually consigned to them, with notice that no further consignment had been or would be made. Whether they did so waive the condition was, under the evidence, a question of fact.

## Proceeds of Sale.

2. The plaintiff, by discounting the draft, acquired, as against the drawer and all persons having notice thereof, a special interest in the property consigned to secure the payment of the draft, and the defendants are liable to it, as a matter of law, for the net amount realized from the sale, but not for the gross sum for which it sold.

Appeal by defendants from an order of the district court for Ramsey county, Brill, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Reversed, on condition.

*Childs, Edgerton & Wickwire,* for appellants, cited:

Tiedeman, Com. Paper, § 227; Daniel, Neg. Inst. (5th Ed.) § 509; First National Bank v. Bensley, 2 Fed. 609; Burke v. Utah, 47 Neb. 247; 3 Am. & Eng. Enc. (1st Ed.) 333.

*Morphy, Ewing & Bradford,* for respondent.

Plaintiff did not attempt to enforce a special and conditional contract. The telegram was a sufficient acceptance of the draft, which was drawn by Gifford upon the defendants and discounted by the plaintiff. Woodard v. Griffiths-Marshall Grain C. Co., 43 Minn. 260. Defendants had notice of all the facts. Notice is actual when one either has knowledge of a fact or is conscious of having the means of knowledge, although he may not use them. 16 Am. & Eng. Enc. (1st Ed.) 790; Knapp v. Bailey, 79 Me. 195. Plaintiff had a special interest in the property consigned to the extent of the amount of the draft discounted by it. Commercial v. Pfeiffer, 108 N. Y. 242; Hall v. First National, 133 Ill. 234; Nutting v. Sloan, 57 Ga. 392. The receipt of the cattle with notice

of the draft in favor of plaintiff amounted to an appropriation of the proceeds to the payment of the draft. McCausland v. Wheeler, 43 Ill. App. 381; First National v. Ege, 109 N. Y. 120; Hathaway v. Haynes, 124 Mass. 311; Hieskell v. Farmers, 89 Pa. St. 155.

START, C. J.

Action to recover $800 paid by the plaintiff to the drawer of a draft on the defendants in reliance upon a telegram received by it from them to the effect that they would honor the draft if two car loads of cattle were consigned to them. At the close of the evidence the trial court directed a verdict for the plaintiff for $828, the amount so paid, with interest. The defendants appealed from an order denying their alternative motion for judgment or a new trial.

The principal question to be here determined is whether the facts established by the undisputed evidence justify the conclusion that the defendants are liable, as a matter of law, to the plaintiff for the full amount paid by it on the draft. The here material facts so established are these: The plaintiff is a banking corporation doing business at Aberdeen, South Dakota. The defendants are copartners doing business as live stock brokers at South St. Paul, this state, under the firm name of Thuet Bros. F. L. Gifford was a cattle buyer engaged in buying and selling cattle, and had frequently shipped stock to the defendants, to be sold for him. In the fall of 1901 he went to Aberdeen, intending to buy cattle there and ship them to the defendants for sale as such brokers. On October 3, 1901, he applied to the plaintiff for money with which to pay for cattle, and requested the defendants to wire the plaintiff to honor his draft for $800; and to their inquiry how many cattle he had, and of what kind, he wired to them this reply:

"Will ship two cars to Chicago, fat cattle, have consignments for you."

Thereupon the defendants wired the plaintiff as follows:

"Will honor F. L. Gifford's draft eight hundred dollars two cars cattle consigned to us."

The plaintiff, in reliance upon this telegram, took Gifford's draft on the defendants for $800, and credited him on open account with the full amount thereof; but it received at the time no bill of lading for the cattle to be shipped to the defendants, and none had then been issued. Gifford checked out and used in paying for cattle all of the money so credited to him, except the sum of three dollars. The total amount he paid for the cattle exceeded $800. The cattle were all placed in one car, and a bill of lading, in which Gifford was named as consignor and the defendants as consignee, taken therefor. The weight of the cattle, as shown by the bill of lading, was the same as the minimum capacity of the car,—22,000 pounds. The cattle, however, in fact weighed at Aberdeen, when loaded, 30,271 pounds. This car load of cattle was consigned to the defendants at Chicago, with the privilege of feeding, watering, and selling at South St. Paul, and left Aberdeen Saturday, October 5, at 8.40 o'clock p. m.

The bill of lading was delivered by Gifford to the plaintiff, who on the next day, Sunday, October 6, at about 2 o'clock p. m., wrote and mailed at Aberdeen a letter in which the bill of lading was inclosed, directed to the defendants at South St. Paul. This letter was to the effect that the plaintiff had paid Gifford's draft of $800, drawn on the defendants, and asked them to honor it, and further advised them that, when the money was advanced on the draft, it was understood that there would be two car loads of cattle, but that only one car load was brought in. The car of stock so shipped arrived at South St. Paul on the day after it was shipped, and the stock was taken care of, fed, and watered by the defendants'_employees, and at some time on the next day, Monday, the car was forwarded to Chicago, where it arrived the next day, Tuesday, October 8, and the cattle turned over to the defendants, without the bill of lading. The cattle were there sold on that day, or the next, by one of the defendants, who was then in Chicago, netting $716.49; but the gross amount received for the cattle was $845.27.

The draft was presented to the defendants for payment on October 12, 1901, and payment refused for the alleged reason that the second car load of stock had not arrived. The undisputed testimony of the superintendent of mails at St. Paul, a witness

on behalf of the plaintiff, was to the effect that there were daily mail trains between Aberdeen and St. Paul, and that a letter mailed at Aberdeen on the evening of one day would, in the usual course of the mail, reach St. Paul at 8.30 o'clock the next morning, but that he had no personal knowledge whether a letter deposited in the mail box or in the post office at Aberdeen on a Sunday afternoon would be taken up and forwarded on that day. There was evidence on the part of the defendants tending to show that neither of them were at South St. Paul during the week that the cattle arrived at South St. Paul. They had, however, an office there in charge of clerks who had authority to receive and open mail, but when, if at all, the plaintiff's letter reached the defendants, or their office, does not appear from the evidence. The defendants in fact had no knowledge of the letter until after the cattle were sold.

1. It is the contention of the defendants that they promised to pay the draft of $800 only on condition that two car loads of cattle should be consigned to them, and, as the condition was not performed, the plaintiff cannot possibly recover in this action. The promise to honor the draft was conditional. This fact the plaintiff well knew when it discounted the draft. The condition was not complied with; hence there can be no recovery on the draft unless the defendants waived the condition. It is the claim of the plaintiff that they did, by accepting and taking charge of the one car of stock consigned to them on its arrival at South St. Paul. The mere fact that only one car arrived was no notice to defendants that the other car would not follow in some other train. It was their duty, as consignees and brokers, to take charge of the car, care for the stock, and sell it at South St. Paul or Chicago, as they deemed best; and, if they did so without notice that only one car of stock would be consigned to them, they would not waive the condition upon which they promised to accept the draft. On the other hand, if they were fully advised by the receipt of the plaintiff's letter to the effect that it had discounted the draft, and that only the one car of stock would be consigned to them before they accepted the consigned property, their act of accepting the consignment with such knowledge would be a waiver of full per-

formance of the condition attached to their promise to honor the draft. If they were thus fully advised before acting, it was their duty to decline to accept the consignment, and so notify all interested parties, if they intended to insist on full performance of the condition upon which they promised to honor the draft. It does not conclusively appear from the evidence that the defendants were so advised. It was a question of fact for the jury whether the letter of the plaintiff was received by the defendants before they accepted the consigned property.

It logically follows that the defendants were not liable on the draft as a matter of law. But it by no means follows that the defendants are not liable in this action to the plaintiff for the amount for which the consigned property sold less the legitimate charges thereon and commissions.

2. The plaintiff's cause of action is not, by the allegations of the complaint, exclusively based upon the draft, or the conditional promise to honor it; but substantially all the facts we have stated are alleged therein, and the inquiry is, do such facts show that the plaintiff is, as a matter of law, entitled to recover from the defendants the sum realized from the sale of the stock. The plaintiff, by discounting the draft under the circumstances shown by the facts of this case, acquired, as against the drawer of the draft, and all persons having notice thereof, a special interest in the consigned property, to secure the payment of the draft. Whether the defendants knew that the plaintiff had so discounted the draft when they accepted the consignment was a question of fact, under the evidence; but, when payment of the draft was demanded, they were fully advised of such special interest, and that the amount realized from the sale of the property, less charges for freight, caring for the stock, and commissions, belongs to the plaintiff. The defendants admit that they received net for the property $716.49, and this amount they were legally bound to account for to the plaintiff. Commercial v. Pfeiffer, 108 N. Y. 242, 15 N. E. 311; First National v. Ege, 109 N. Y. 120, 16 N. E. 317; McCausland v. Wheeler, 43 Ill. App. 381.

Counsel for plaintiff, however, insist that it is entitled to recover from the defendants a sum equal to the amount of the draft

88 M.—24

and interest, because the gross amount for which the consigned property sold exceeded the amount due on the draft, and urge that the cases we have cited in support of the proposition that the plaintiff acquired a special interest in the consigned property sustain such further claim. There is no justice in the claim, nor do the authorities cited support it.

In the first one cited, certain cattle and hogs were consigned to the defendants, dealers in live stock, by a buyer of such stock, who drew a draft on the defendants for $5,778, which the plaintiff discounted, but the defendants did not accept. They, however, accepted the consigned property, and sold it for $5,631.82, net, over and above charges and commissions thereon. This net sum, less $380.35, which the defendants claimed to retain on account of a pre-existing debt due to them from the drawer of the draft, they paid on the draft, leaving a balance of $526.53 due thereon. The trial court directed the jury to return a verdict for the plaintiff for $380.35, the balance of the net proceeds from the sale of the consigned property, and not the balance due on the draft.

In the second case cited the defendants were produce commission merchants. A buyer was accustomed to assign to them produce, and drew a draft on them against each shipment. The drafts were discounted by the plaintiff. One hundred and forty-five drafts, in all, were so drawn and discounted, which were paid by the defendants, except the last ten, aggregating $5,300, which they refused to accept. But they accepted the consigned property against which the drafts were drawn, sold it, and applied the proceeds thereof in payment of its claim against the drawer for losses on previous deals. It was held that by the mere receipt of the last ten shipments the defendants acquired no lien on the property to the prejudice of the plaintiff, and that it was their duty to hold and dispose of the property on plaintiff's account, and apply the proceeds of the sale to the payment of the drafts. Of course, if the defendants were to dispose of the property as brokers for the plaintiff, they were entitled to retain from the gross amount for which the property was sold the amount paid for charges thereon and commissions. There is nothing in the case to indicate that the defendants were charged with any greater amount than the

net sum realized from a sale of the property, over and above the charges and commissions thereon.

In the last case cited it was held that a consignor may always direct the disposition of the net proceeds of a consignment, and, if a consignee takes a consignment with knowledge that a draft has been drawn against it, he cannot retain the proceeds of the consignment and repudiate the draft. But there is nothing in the decision to justify the conclusion that in such a case the consignee could be held for anything more than the net amount realized from a sale of the consigned property.

In the case at bar the plaintiff knew that the live stock was to be consigned to the defendants as brokers to be sold, and proceeds thereof accounted for, and it necessarily understood that charges of transportation and sale must be first paid. The net sum realized from a sale of the consigned property was all that was realized by a sale of their interest, precisely as if it had been sold subject to charges thereon. If the defendants waived the condition annexed to their promise to honor the draft, then they are liable for the full amount thereof, without reference to the price received for the property; but, if they are not liable on the draft, then they are only liable for the net amount realized from its sale, for they were not wrongdoers in the premises. It follows that the plaintiff was not entitled to an instructed verdict for any greater amount than $716.49, with interest thereon from October 12, 1901. Whether it was entitled to recover any greater amount depended on the finding of the jury on the question of waiver. The trial court erred in directing a verdict for the full amount of the draft.

It is therefore ordered that the order appealed from be reversed, and a new trial of the action granted, unless the plaintiff, within fifteen days next after notice of the filing of the remittitur herein in the district court, files therein its written consent that the verdict may be reduced to $716.49, and interest from October 12, 1901. If this be done, judgment will be entered on the verdict as reduced; otherwise the order granting a new trial shall be absolute.