EZRA N. MANORE v. KILGORE-PETELER COMPANY.[1]

March 12, 1909.

Nos. 15,954—(228).

**Assumption of Risk.**

Plaintiff, thirty five years of age, a foreman or straw boss of defendant, about to unload a flat car, complained to defendant's superintendent that the number of men provided him was not sufficient to do the work safely. The superintendent refused to furnish additional help. Plaintiff proceeded to the work, and safely unloaded all or practically all of one of two piles of timbers on the car. In unloading the second pile, one timber in falling struck the other timbers at the top of the other tier, whereby plaintiff was thrown from the car and injured. It did not appear that, if the method used in unloading the first pile had been used in unloading the second pile, the work could have been done safely. It is *held* that plaintiff's own conduct precluded his recovery of damages.

Action in the district court for Hennepin county to recover $10,250 damages for personal injuries. The case was tried before Frederick V. Brown, J., and a jury which returned a verdict in favor of plaintiff for $500. From a judgment entered pursuant to the verdict, defendant appealed. Reversed.

*Brown, Albert & Guesmer,* for appellant.

*James R. Hickey,* for respondent.

JAGGARD, J.

Plaintiff and respondent, a man thirty five years of age, for five months before the accident herein described had been yard foreman in the employ of defendant and appellant. At the time of the accident he was either a foreman or a straw boss over the man with whom he was working. Some days before the accident a freight car was switched into defendant's yards, loaded with timbers with square sides, which were 7x10 inches in dimension and from fifteen to sixteen feet long. They were piled on the car four high in tiers and two tiers to the car. Plaintiff with a crew of four men undertook to unload the car and move the unloaded timbers to a small truck, by which they were to be

[1] Reported in 120 N. W. 340.

carried to the mill.  Plaintiff, standing on the car, removed all or practically all of one tier of timbers.  Defendant's employees working on the ground carried the timbers, by means of hooks attached to each end of the timber, to the truck.  A man took hold of one of the two handles of each hook.  Thus four men were required to carry each timber.  Part of the second tier had been removed.  While plaintiff was removing another timber on the freight car it swung out at one end across the car and caught two timbers on the next tier, causing them to tumble over, strike him on the heel, and throw him head first to the ground.  The jury found for the plaintiff in the sum of $500.  This appeal was taken from the judgment.

The gist of the negligence alleged was defendant's failure to provide sufficient and proper amount of help.  The further allegation of negligence, of failure to provide a safe place, and of the giving of improper or wrongful orders to this plaintiff to proceed to do the work with the help furnished, does not in final analysis amount to additional or different negligence.  Whether the giving of that order served to exonerate defendant [plaintiff] from the assumption of risk or contributory negligence will be subsequently referred to.

No question can arise that the failure of the master to employ a sufficient number of competent employees may constitute actionable negligence on his part.  It is doubtful on this record whether such failure was shown to be a question of fact.  It will, however, be assumed that this defendant was negligent in this respect.  None the less we are of opinion that defendant [plaintiff] was precluded from recovering by his own conduct; for the defendant [plaintiff] himself testified that before the accident occurred he went to see "the superintendent about more men, * * * and he said he didn't have any more men to send out there at that time, and that he thought one man on a car was sufficient to throw those timbers off of a flat car."  "Q. You wanted two men to handle the timbers because you thought that two men were necessary in order to make it safe and proper, and in order to make the work sufficiently easy and not too hard, isn't that the reason?  A. I didn't care about the hard work, that is the reason."  "Q. That is the reason, except you didn't care so much about the hard work?  A. Yes.  Q. In other words, you were willing—you didn't care so much about making it easy as you did for making it proper and safe?  A.

Yes." Plaintiff also testified that the superintendent did not promise to give him another man to assist him in the work and that he then "went back there and went to work."

The superintendent gave no assurance of safety, and said nothing likely to mislead plaintiff or to misrepresent the danger of the situation. It is clear that plaintiff knew the danger and appreciated the risk. He had complained of the insufficiency of the number of servants. He thought the actual number did not make the work safe and proper. None the less he undertook to do the work with the servants actually provided. He was a man of mature years and abundant experience in this general class of work. His counsel argues, however, that "this was the only time that plaintiff unloaded or assisted in unloading timbers of any kind from a flat car." The record shows that he had helped unload such timbers, and that he had bossed practically the same kind of a job as this. It is true that he did not remember having unloaded this kind of timber piled in this way on a flat car; but he had unloaded such timber from a box car and a gondola car. The gondola car was defined "as a flat car with sides coming up three or four feet, perhaps, all around; permanent sides, instead of sticks that can be removed." It is clear that plaintiff assumed the risk of the situation or was guilty of contributory negligence from this fact of the case alone. That conclusion appears, also, to be necessitated by the fact that plaintiff himself had removed all or most of the first tier of the first pile of timbers from this particular car by a method which proved to be safe. No explanation appears to have been made why he could not have removed the second tier with safety by the employment of the same method.

The adjudicated cases all throw little light on the subject. The conclusion agrees with the authorities of assumption of risk in unloading cases, which did not, however, involve the insufficiency of fellow servants. Galland v. Great Northern Ry. Co., 101 Minn. 540, 111 N. W. 1133; Boyer v. Eastern Ry. Co., 87 Minn. 367, 92 N. W. 326. Cf. Hagglund v. St. Hilaire L. Co., 97 Minn. 94, 106 N. W. 91. Smith v. St. Paul & D. R. Co., 51 Minn. 86, 52 N. W. 1068, is an authority in accordance with the conclusion here reached somewhat more specifically; and see Texas & P. Ry. Co. v. Rogers, 57 Fed. 378, 6 C. C. A. 403. It would be idle to cite authorities to the effect that a servant who

knows and appreciates the danger of working with an insufficient number of fellow servants, of which fact he has actual knowledge, assumes the risk as a matter of law. No authorities appear opposed to this conclusion. Atlas v. National Biscuit Co., 100 Minn. 30, 110 N. W. 250, has no bearing on this controversy. That was a case where a minor was injured by unguarded machinery. Such a case is in a class by itself. De Greif v. Northwestern Knitting Co., 106 Minn. 15, 118 N. W. 558.

The judgment accordingly must be reversed, and judgment entered for the defendant notwithstanding the verdict. It is so ordered.