## ADOLPH OLSEN v. BLUE LIMESTONE COMPANY.[1]

June 14, 1912.

Nos. 17,674—(227).

**Negligence of master — contributory negligence of servant.**
    In this, a personal injury action, it is *held* that it did not conclusively

[1] Reported in 136 N. W. 739.

---

[Note]   Duty to warn servant of perils of work, see note in 44 L.R.A. 33
    Injury to servant received in obeying a direct command, see note in 48 L.R.A. 753 and note in 30 L.R.A. (N.S.) 436.

appear that defendant was not negligent, or that plaintiff was guilty of contributory negligence, or that he assumed the risk.

Action in the district court for Hennepin county to recover $5,421.50 for personal injuries. The substance of the allegations in reference to the negligence of the defendant is given in the opinion on page 247. The answer alleged contributory negligence on the part of plaintiff and that he knew and assumed the risks of the work. The reply was a general denial. The case was tried before Steele, J., who at the close of the testimony denied defendant's motion for a directed verdict in its favor, and a jury which returned a verdict in favor of plaintiff for $1,100. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Brown & Guesmer,* for appellant.

*Robert H. Alcott,* for respondent.

BUNN, J.

This is a personal injury action, in which plaintiff had a verdict for $1,100. Defendant moved for judgment notwithstanding the verdict. This motion was denied, judgment was entered, and defendant appealed.

As there was no motion for a new trial, the record presents only the question whether on the evidence defendant was entitled to judgment notwithstanding the verdict. In other words, does it conclusively appear from the entire evidence either (1) that there was no negligence on the part of defendant that was the proximate cause of the injury, or (2) that plaintiff was guilty of contributory negligence, or (3) that he assumed the risk?

There was evidence of the following facts:

Defendant owned and operated a stone quarry in Minneapolis. At the time of the accident, December 13, 1910, plaintiff was a laborer in its employ. On that day a crew of men, of which plaintiff was one, under the direction of defendant's superintendent, were engaged in the work of filling up the quarry, from which stone had been taken, with dirt and rocks hauled in on railroad dump cars by engines of the

Northern Pacific Railway Company. A train of these cars came in, and on one of the cars was a stone weighing three or four tons. This car was dumped by tilting it to an angle of forty-five degrees; but the large stone caught against the side board, which was lifted, but not enough to permit the stone to pass under. Defendant's superintendent, who was standing on the ground at the low side of the tilted car, gave an order to the foreman to get men to split the stone.

The foreman communicated this order to plaintiff and two other men, who were at the time engaged in shoveling and moving tracks some distance away. Plaintiff asked for tools with which to split the rock, and men went after wedges; plaintiff getting a hammer from a fellow workman. Plaintiff testified that he proceeded to the car, and started to go from the upper side, where he was, to the lower side, to see whether the rock could be split from the lower end, and to find out what the conditions were. As he was about to go between the cars, the superintendent called in a peremptory voice: "Everything is all right here. Hurry up and get up in the car and break that rock, and get these fellows the hell out of here." The foreman said: "Yes, yes; everything is all right. Get right up in the car, Olsen, and break it from the top."

Plaintiff then went up into the car, and with the assistance of a workman, who held a wedge, started to split the rock by pounding the wedge in a seam running lengthwise of the stone about half way between its top and bottom. The bottom of the stone rested on the car floor. There was a space between the upper edge and the upper side of the car of some eighteen inches. Plaintiff, in hammering the wedge, placed his right leg on top of the rock, and his left in the space between the upper edge of the rock and the upper side of the car. The car floor and the rock itself were slippery, and owing to this, and to the fact that the floor was tilted at an angle of forty-five degrees, plaintiff could take no other position than he did. After he had pounded on the wedge with his eighteen-pound hammer for some time, the stone split, the half resting on the car floor slid out

through the lower door, and the upper half fell and caught plaintiff's left foot, causing the injuries for which the action was brought.

The charges of negligence in the complaint were that defendant negligently ordered plaintiff to work in an unsafe place, failed to furnish him a reasonably safe place to work, and failed to warn him of the danger. It is entirely clear, we think, that the place where plaintiff was ordered to work was one of much danger to the servant, and there is no claim that plaintiff was warned of the danger. Of course, it was not negligence to fail to warn him, if the dangers were known to him, or obvious to a man of his experience. It is probably true that plaintiff knew all the conditions, except one, and knew the dangers to be apprehended, except the danger arising from the fact that the lower edge of the stone rested only on the partially lifted door, with no blocking between it and the ground, which was some two feet away. It was for the jury to say whether the plaintiff knew that the stone was not blocked, so as to prevent the lower half, when split, from sliding out the door. If his testimony is believed, he was not permitted to examine the lower edge of the stone, and did not know that the superintendent had not caused it to be blocked. As far as the negligence of defendant is concerned, the evidence was sufficient to justify the submission of the question to the jury.

Defendant argues that because the place was safe when plaintiff was ordered into it, and the danger was one to be created by the very work which plaintiff was to do, the rule of a safe place to work does not apply, and there was no duty to warn or notify plaintiff of the danger. This argument is plausible, but unsound, under the peculiar facts here.

While it is true that there was no danger until the rock was split, we think it fairly apparent that the place did become dangerous when this was done, unless precautions had been taken to prevent the rock sliding before the plaintiff had time to get out of the way. In other words, it was not so much the splitting that made the place dangerous as it was the fact that defendant had taken no means to guard against such an accident as actually happened. And defendant's duty to

warn is based only upon its knowledge that no attempt had been made to block the space between the lower end of the stone and the ground, and the evidence tending to show that plaintiff did not have such knowledge or the opportunity to obtain it. It is asserted that plaintiff had full opportunity to examine the entire situation; but the evidence, as we have tried to point out, is not conclusive in defendant's favor on this proposition.

The questions of plaintiff's contributory negligence and whether he assumed the risk may be considered together.

He was an experienced quarryman, and knowledge of the laws of gravity must be imputed to him. He knew that the car floor was tilted at an angle of forty-five degrees, that it was slippery, and must be held to have known that the rock, or part of it, would slide as soon as the tension of the car door was released. The very object of splitting the rock was to get it out of the car. Were it not for the evidence as to his want of knowledge of conditions at the lower end of the stone, and the assurances of the superintendent and the foreman that everything was all right, coupled with an order to hurry and split the rock from the top, we would be forced to say that there was both contributory negligence and assumption of risk. But the evidence tending to show that plaintiff was sent back by the superintendent when he was about to examine conditions at the lower end, and was assured that "everything was all right," was sufficient, in our opinion, to make the case one for the jury on these questions.

Plaintiff testified that he did not know that the stone was not blocked, and that he could not see conditions at the lower end from the position he was in when attempting to split the rock. In view of the assurances of safety given by the master, and the inability of plaintiff to discover the conditions which might inform him that such assurances could not be relied upon, we are unable to say that it is conclusive either that plaintiff did not act with reasonable care for his own safety or that he knew or ought to have known that the under half of the stone might slide and let the upper half down when he succeeded in splitting it. It therefore did not conclusively appear that plaintiff assumed the risk.

It is insisted that the assurances of the superintendent and the foreman gave plaintiff no right to rely to any extent on "everything being all right"—this because (1) they were not specific assurances that any particular thing had been done; and (2) because plaintiff could have ascertained for himself whether "everything was all right." But we cannot say that plaintiff had no right to understand from these assurances that the stone had been blocked, and it does not appear conclusively that plaintiff could see or had any opportunity to see that it had not been. This is the distinguishing feature between the case at bar and the cases of Hjelm v. Western Granite Contracting Co. 94 Minn. 169, 102 N. W. 384, Galland v. Great Northern Ry. Co. 101 Minn. 540, 111 N. W. 1133, Pasco v. Minneapolis Steel & M. Co. 105 Minn. 132, 135, 117 N. W. 479, Manore v. Kilgore-Peteler Co. 107 Minn. 347, 120 N. W. 340, and Reid v. Northwestern Fuel Co. 116 Minn. 96, 133 N. W. 161. In the Pasco case the assurance was given by a fellow servant, and in each of the other cases the servant knew or could easily ascertain the condition which made the place unsafe. The case at bar comes within the rules laid down in Anderson v. Pitt Iron Mining Co. 103 Minn. 252, 114 N. W. 953.

Our conclusion is that it does not conclusively appear that defendant was not guilty of negligence in one or more of the particulars charged in the complaint, or that plaintiff was guilty of contributory negligence, or that he assumed the risk. It is perhaps a doubtful case; but a full consideration of the record and the arguments of counsel satisfies us that it was a case for a jury.

Judgment affirmed.