PETER MARSHALL v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.[1]

December 17, 1915.

Nos. 19,464—(121).

**Master and servant — assumption of risk — proximate cause — res judicata.**

Plaintiff was one of a crew of men engaged in removing defective piling from under a bridge in order to replace it with sound timbers. The piles were sawed off at the ground, worked loose from the drift bolts that held them at the top, and allowed to fall to the ground. While plaintiff was attempting to loosen one of the piles from the drift bolt

[1]Reported in 155 N. W. 208.

Note.—As to abrogation of defense of assumption of risk by Federal employer's liability act, see notes in 47 L.R.A.(N.S.) 62; and L.R.A. 1915C, 47.

that held it, it suddenly came loose, fell and injured him. The reason why the pile came loose from the drift bolt before it was expected to, was that it was cracked and rotten at the top where the bolt entered. Plaintiff knew that the piles were rotten and unsafe for use, and that they were being removed for that reason. He did not know that the particular pile which injured him was rotten at the top. It is *held:*

(1) Defendant did not owe plaintiff the duty to warn him of the particular defect in this pile that caused it to fall before he expected it. Plaintiff assumed the risk of this defect, and is precluded from recovering for an injury caused thereby.

(2) Conceding that defendant did not employ a sufficient number of men to do the work, it does not appear that this was the proximate cause of the accident, and it conclusively appears that plaintiff assumed this risk.

(3) Under the Federal Employer's Liability Act assumption of risk is still a defense except in certain cases specified in the act, and the present case is not within the exceptions.

(4) The decision on a former appeal in this case reversed an order refusing a new trial after a verdict for plaintiff, but held that it did not conclusively appear that plaintiff had no cause of action, and that the circumstances did not require that judgment be directed notwithstanding the verdict. In view of the rule that guides this court in refusing judgment notwithstanding the verdict when it appears probable that plaintiff has a meritorious cause of action, though the record before the court shows no case, it is *held* that the former decision is not *res judicata* on this appeal.

Action in the district court for Waseca county to recover $3,000 for personal injury received while in the employ of defendant. After the appeal reported in 127 Minn. 244, 149 N. W. 296, the case was tried before Childress, J., who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $2,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and judgment for defendant ordered.

*Edward C. Stringer, McNeil V. Seymour* and *Edward S. Stringer,* for appellant.

*Moonan & Moonan,* for respondent.

Bunn, J.

A former appeal in this case from an order denying defendant's alternative motion for judgment or a new trial, resulted in a reversal of the order refusing a new trial. The decision was placed upon the ground that there was no evidence tending to prove the existence of a custom to give warning of the danger, which was the sole ground of negligence submitted to the jury as a basis for recovery. We said, however, that it did not conclusively appear that plaintiff had no cause of action, and that the circumstances did not require that judgment be directed notwithstanding the verdict. Marshall v. Chicago, R. I. & Pac. Ry. Co. 127 Minn. 244, 149 N. W. 296.

On the new trial the charges of negligence relied on by plaintiff, and submitted to the jury by the trial court, were: (1) The failure of defendant to instruct or warn plaintiff of the danger; (2) employing an insufficient number of men in doing the work. The verdict was in favor of plaintiff for $2,000. The trial court denied defendant's alternative motion, and it appealed from this order.

The first contention of defendant on this appeal, as it was on the former appeal, is that judgment notwithstanding the verdict should have been ordered, because it conclusively appeared that there was no actionable negligence on the part of defendant, and that plaintiff assumed the risk. Except that it appeared on this trial that the case was within the Federal Employer's Liability Act, there is no material difference in the evidence on the two trials. In the opinion on the former appeal the facts are stated as follows:

"At the time of the accident, a bridge crew of which plaintiff was a member, were engaged in removing from a trestle bridge a bent or row of piling which had become decayed to such an extent that it was to be replaced by new material. In constructing the bridge a heavy timber had been placed across the top of the bent or row of piling as a cap, and had been fastened to the piling by drift bolts driven through the cap and into the top of each pile near its center. In removing the piles, the crew cut them off eight or ten feet below the cap timber, pushed or pulled the lower end of the upper piece free from the lower piece which was embedded in the ground, and then worked the upper piece loose from the drift bolt which held it to the cap timber. At all times

prior to the accident, the upper piece, after it had been pulled free from the lower piece, had been held suspended by the drift bolt, which fastened it to the cap timber, until the men by twisting it and moving it back and forth worked it loose from such bolt. At the time of the accident plaintiff, unassisted, pulled the upper piece of one of the piles free from the lower piece, and it dropped down upon him dislocating his ankle. Subsequent examination disclosed that the wood around the drift bolt was rotten and the top of the pile cracked or split."

Additional facts material on the present appeal to the questions of negligence and assumption of risk, are these:

The piles were sawed off close to the ground, and, before attempting to work a pile loose from the drift bolt, it was trimmed at the base with the axe to give it more play, it was then lifted from the piece that remained in the ground, and twisted and moved back and forth until it worked loose from the bolt and fell to the ground. Plaintiff' had been a member of this bridge crew for some six months before May 27, 1913, the day of the accident, and was an experienced man and knew that the piling was being removed because it had become rotten and was considered unsafe as a support for the bridge. His experience in taking out defective piling, however, dated from the time the frost went out in the spring of that year. His testimony was that the gang foreman told him to do the work of loosening the piles after they had been sawed off, and to do it alone; that the foreman said nothing about the drift bolts holding or about any particular defects in this pile or the others; that he, plaintiff, had loosened one pile from its drift bolt before he attempted the one which caused the accident; that he did not look up to the top of the pile, though it was but two or three feet above his head, and though the cracks in it could be plainly seen had he looked. The foreman had made an examination of the piling, but had not notified the men of any particular defects or dangers. According to plaintiff's testimony, the pile came loose from the drift bolt immediately on plaintiff's lifting it from the stump in the ground, and not, as he expected, only after effort on his part to work it loose.

The claim that the foreman was negligent in not instructing or warning plaintiff that this pile was rotten at the top cannot be sustained, unless it be held that there was a legal duty to give such in-

struction or warning. This legal duty did not exist, unless the defect was or ought to have been known by the foreman, and unless it was one which plaintiff did not and was not bound to know. It may be conceded that plaintiff did not actually observe the cracks in this pile, or know that it was rotten at the top where the drift bolt went in, though we are unable to agree to the proposition that these conditions were not as much open to observation from below as from above, by plaintiff as by the foreman. Plaintiff knew that the piles were defective in some way, and that they might be rotten where they were exposed to the elements, particularly at the top, and where they entered the ground, though he claims that the defects he expected were at the bottom. The very purpose of the work, as plaintiff well knew, was to remove defective and rotten piling, and to replace it with sound timbers. We are unable to find in the facts of the instant case anything that takes it out of the rule applied in Fraker v. St. Paul, M. & M. Ry. Co. 32 Minn. 54, 19 N. W. 349; Kelley v. Chicago, St. P., M. & O. Ry. Co. 35 Minn. 490, 29 N. W. 173; Broderick v. St. Paul City Ry. Co. 74 Minn. 163, 77 N. W. 28, and Saxton v. Northwestern Tel. Exch. Co. 81 Minn. 314, 84 N. W. 109. Plaintiff knew generally that the piles were rotten, as in the Kelley case the plaintiff knew generally that the car was in bad order, and in the Broderick and Saxton cases that the poles were being taken down because of their bad condition. That he did not know the particular defect in each pile he was ordered to take down is unimportant; it required no particular skill or experience to enable him to discover the defect. He had equal opportunity with the foreman for discovering that this particular pile was cracked and rotten at the top, and was as well able to discover and appreciate the danger. We see no distinction between this case and those cited, and there is no doubt that the law is correctly stated and applied in those cases. Whether we say that defendant owed no duty to point out the particular defect and to warn plaintiff, or that plaintiff assumed the risk, the result is the same. Plaintiff strongly argues that this is a case of a latent or concealed danger calling for an application of the well-known rule that it is the duty of the master to exercise reasonable care to discover and inform the servant of such dangers. He cites and relies upon such cases as Heydman v. Red Wing Brick Co. 112 Minn. 158, 127 N. W.

561; Bell v. Northern Pacific Ry. Co. 112 Minn. 488, 128 N. W. 829; Arnold v. Dauchy, 115 Minn. 28, 131 N. W. 625; Olsen v. Blue Limestone Co. 118 Minn. 244, 136 N. W. 739, L.R.A. 1915B, 1149; Dimetre v. Red Wing Sewer Pipe Co. 127 Minn. 132, 148 N. W. 1078. In none of these cases was the work being done, the removal of poles, piles or other structures, because they had become unsafe for use. We have in the present case no latent or concealed danger that was not equally open to the servant to discover as to the master, nor do we have here any element of an assurance of safety, such as was present in some of the cases relied on. We must hold that plaintiff is precluded from recovery on the first ground of negligence charged.

As to the other ground of liability upon which the case went to the jury—the employment of an insufficient number of men—it is doubtful whether having two or more men to assist in working the pile loose from the drift bolt would have obviated the danger, but it seems fairly clear that this was not the proximate cause of the accident. When we remember that the very object of the work which plaintiff was doing was to procure the pile to fall on the ground, it is difficult to see causal connection between the accident and the fact that plaintiff did the work alone. The complaint alleged and plaintiff testified that it was perfectly safe for one man to do the work of twisting the pile from the drift bolt and letting it drop, so long as the top of the pile was not rotten, and it is clear enough that it is safe even under such conditions if the man who has hold of the pile knows that it may drop at any time.

A further reason why the failure to employ more men is not a ground of liability is that plaintiff assumed any risks arising from the insufficient number of men. He knew that the pile would fall and that the precise moment when it would fall was uncertain. If one man could not safely handle the falling pile, it was a fact which plaintiff knew, and it must be held that he assumed any risks that resulted from an insufficient number of men. There was no assurance of safety by the foreman, and nothing said that was likely to mislead plaintiff or to misrepresent the situation. Manore v. Kilgore-Peteler Co. 107 Minn. 347, 120 N. W. 340; Stenvog v. Minnesota Tr. Ry. Co. 108 Minn. 199, 121 N. W. 903, 25 L.R.A.(N.S.) 362, 17 Ann. Cas. 240.

In holding that it conclusively appears that plaintiff assumed the

risk, and for that reason is precluded from a recovery in this case, we should note that under the Federal Employer's Liability Act assumption of risk is still a defense except in cases where the violation by the common carrier of "any statute enacted for the safety of employees contributed to the injury or death of such employee." Section 4, Federal Employer's Liability Act of 1908, 35 St. 66; Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. ed. 1062, L.R.A. 1915C, 1, Ann. Cas. 1915B, 475. The present case plainly does not come within any of the exceptions.

Plaintiff makes the claim that the holding on the former appeal that it did not conclusively appear that plaintiff had no cause of action, and that the circumstances did not require that judgment be directed notwithstanding the verdict, is the law of the case. It is the settled rule that, on a second appeal in the same case all questions, both of law and fact, which were or might have been determined on the first appeal are *res judicata.* 1 Dunnell, Minn. Dig. § 398, and cases cited. But this rule hardly applies to all cases where the court has granted a new trial, but has declined to order judgment notwithstanding. Under a familiar doctrine of this court, it will not grant judgment absolute where it appears probable that plaintiff may have a meritorious cause of action, although on the record before the court no case has been made. We think the decision on the former appeal was upon this ground. It did not appear conclusively that plaintiff might not, on another trial, make a case for the jury; it was therefore not a case that required that judgment be directed notwithstanding the verdict. There has been another trial, no better case has been made, and it now appears that no better case can be made. The circumstances now require, in our opinion, a holding that it conclusively appears that plaintiff has no cause of action, and that defendant is entitled to judgment ending the litigation.

Order reversed, and judgment for defendant notwithstanding the verdict ordered.