**DEERE v. SOUTHERN PAC. CO.**

No. 9706.

Circuit Court of Appeals, Ninth Circuit.

Nov. 18, 1941.

Frank C. Hanley, of Portland, Or., for appellant.

Alfred A. Hampson, James C. Dezendorf, Clarence J. Young, and Richard B. Maxwell, all of Portland, Or., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant, Esther P. Deere, as the administratrix of the estate of Amos J. Deere, brought this action in the United States District Court for the District of Oregon to recover damages from appellee, Southern Pacific Company, for the death of her intestate, for the benefit of his minor children and herself as widow. Liability is sought to be imposed upon appellee, a Kentucky corporation, engaged in the operation of a railroad in interstate commerce, through the provisions of the Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. §§ 51–59.

The following outline of the case is taken from a statement of facts agreed upon by counsel in a pre-trial proceeding:

Amos J. Deere, as part of his duties as a signalman in defendant's employ, was engaged in maintaining the block-signal system on a of line of defendant's railroad which is located through Monterey county, California, and in the performance of his duties operated a motorcar weighing 550 pounds, furnished him by defendant. On the afternoon of March 21, 1939, a dry, clear day, he was traveling on his motorcar in a northerly direction along the main track of the railroad. At the same time defendant was operating in a southerly direction on the same track, at a speed of about thirty-five miles per hour, a certain freight train consisting of an engine, seventy-two empty cars, five loaded cars, and a caboose. From the time the train and Deere were within a mile to a half mile of each other there was no obstruction to vision between them. The whistle on defendant's locomotive was sounded, and after some delay Deere stopped the speeder and commenced to remove it from the

track. Before the speeder was entirely removed from the track, however, a collision occurred between the train, the speeder, and Deere, in which collision he was so severely injured that he died instantly.

The plaintiff charged defendant with actionable negligence: (1) because it put decedent to work on the motorcar without stationing sufficient help thereon to assist him in removing the car from the track, which defendant knew was necessary in order to permit approaching trains to pass; (2) because its engineer failed to avail himself of the last clear chance to avoid the accident. The case was tried to the court sitting with a jury. When the plaintiff's and defendant's evidence had been received, the trial judge sustained a motion of defendant for a directed verdict on the ground that plaintiff could not recover because her intestate had assumed the risk of injury and death as a matter of law. From that ruling the plaintiff brings this appeal, contending that there was sufficient evidence to warrant submission of the case to the jury.

"The test as to whether a directed verdict should be granted, is not whether the evidence brings conviction in the mind of the trial judge; it is whether or not the evidence to support a directed verdict as requested, was so conclusive that the trial court in the exercise of a sound judicial discretion should not sustain a verdict for the opposing party." O'Brien, Manual of Federal Appellate Procedure, 3d Ed., p. 15. Respecting the power of the trial court to grant or deny a motion for directed verdict the Supreme Court of the United States stated in Gunning v. Cooley, 281 U.S. 90, 91, 50 S.Ct. 231, 233, 74 L.Ed. 720, as follows:

" 'When on the trial of the issues of fact in an action at law before a Federal court and a jury, the evidence, with all the inferences that justifiably could be drawn from it, does not constitute a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, so that such a verdict, if returned, would have to be set side, the court may and should direct a verdict for the other party.' Slocum v. New York Life Insurance Co., 228 U.S. 364, 369, 33 S.Ct. 523, 525, 57 L.Ed. 879 [Ann.Cas.1914D, 1029].

"A mere scintilla of evidence is not enough to require the submission of an issue to the jury. * * *"

The particulars surrounding the occurrence of the accident, as revealed at the trial were:

The train was rounding a big sweeping curve about two miles north of Bradley, California, when the engineer, Fredrick E. Lamphier, first saw Mr. Deere, who was then approaching the train on a motorcar at a distance of about half a mile. Immediately Lamphier sounded a warning with the engine's whistle. But Deere, seeming to pay no attention, continued moving toward the approaching train. When the train was about a quarter of a mile from Deere, the engineer again blew the whistle and at the same time made a "service" application of the air brakes, which tended to slow the train down gradually and which did reduce the speed to about eighteen or twenty miles per hour. When this second warning blast from the whistle was given, the signalman stopped the speeder and endeavored to remove it from the track. He had removed all but one rear wheel, when the engineer, believing, according to his testimony, that the car was stuck, applied the emergency brakes and simultaneously pulled the whistle cord, causing the whistle to blow continuously. The intervening distance between Deere and the locomotive was then about 500 feet. When the engineer's view was cut off by the locomotive (at a distance of about 150 feet), the decedent was still struggling with the speeder. He did not get out of the way, and he and the motorcar were struck by the train, which was moving at the rate of about fifteen miles per hour at the moment of impact. Before it was brought to a complete halt the train traveled another three or four hundred feet. Deere's body was found back on the track under one of the boxcars.

The evidence shows that the accident occurred at a landing, a flat place built up along side the track and on a level with the trackbed, which landing is located 140 feet south of a semaphore designated as signal 1917. That signal indicates to one who is south thereof the approach of any train within a distance extending 8,700 feet to the north of said signal. The semaphore can be seen continuously from the south, commencing at a point 2,138 feet away, and from the same point a train from the north can be seen from the time it is 3,820 feet distant, as it rounds the big sweeping curve, heretofore mentioned, which is just north of signal 1917. It was further revealed by the evidence that the deceased did not have

to approach so near to the onrushing train but could have removed the motorcar at any place along the track for a distance of at least one-quarter of a mile south of the landing.

There was a showing of neglect on the part of Deere in that on the morning of the day of the accident he failed to procure, in accordance with instructions, a line-up of the trains that were to be moving on the tracks in his territory on that particular day.

 With regard to the first charge of negligence, we agree with appellant that when failure to provide sufficient help results in injury to an employee, there exists a ground of negligence which is recognized under the Federal Employers' Liability Act (Chesapeake & Ohio Ry. Co. v. Winder, 4 Cir., 23 F.2d 794), but to permit recovery in such case it must be shown that such failure was the proximate cause of the accident. Marshall v. Chicago, etc., R. Co., 131 Minn. 392, 155 N.W. 208; Strunks v. Payne, 184 N.C. 582, 114 S.E. 840. To recover plaintiff is required to prove not only that the railroad was negligent, but that the injury resulted proximately from that negligence. Healey v. New York, O. & W. R. Co., 2 Cir., 79 F.2d 542. Here, the plaintiff contends that the speeder was too heavy for decedent to handle properly. But if it be conceded, arguendo, that defendant did not provide sufficient help, yet there is no showing whatever of a direct causal connection between that omission and the death of plaintiff's decedent. His death was not owing directly to the act of removing the speeder, but was due proximately to his failure to step aside from the path of the train, the approach of which was fully known to him, as is evidenced by the fact that he had begun to remove the speeder from the way of the train. He was free to handle his own movements; there was no superior's order requiring him to stay with the car at the risk of his life. Under these circumstances reasonable men must agree that the accident was not brought about through any failure to furnish sufficient help, and there is therefore no question for the jury on this point. Moreover, all of the evidence introduced relative to this question was to the effect that there was no need for providing the decedent with help. It was shown that it has always been the practice of signal maintainers to operate their cars alone,

which cars are referred to as "small one-man inspection cars". Furthermore, since 1928 the decedent had handled the same car along the same stretch of track, which was twenty-two miles long, and during that time it was part of his duties daily to get out of the way of every train which came along. Deere's immediate superior, a signal supervisor, testified, as likewise did the engineer, that he had seen Deere remove the same car from the track "many times". From all these circumstances it can be said that deceased voluntarily assumed by his contract of employment all obvious and ordinary risks involved, among which there would unquestionably be those openly and directly connected with the act of removal of the motorcar from the track, an operation known by the deceased to be a part of his duties. Delaware, etc., R. Co. v. Koske, 279 U.S. 7, 11, 49 S.Ct. 202, 73 L.Ed. 578. And in any event, there was no evidence from which the jury could have found that there was insufficient help. Cf. Central Vermont Ry. Co. v. Sullivan, 1 Cir., 86 F.2d 171, 174.

The cases cited by appellant on the question of insufficient help are not in point, particularly for the reason that here, unlike the situation in any of them, the accident did not result directly from the doing of the act, for the performance of which there was allegedly insufficient help. In addition, in each of the cited cases the injured party did not have the control over his actions that Deere was free to exercise, but was acting under the immediate direction and orders of a superior. Another distinguishing factor is that in the case at bar Deere under his contract of employment was required to remove the car unaided, and he had done so for many years.

### As to the Last Clear Chance.

 The decedent was a railroad man of long experience. It was his duty to remove his speeder from the track so that approaching trains could pass. The trains have the right of way, and he knew that in all events he must clear the track for the trains, that he could not expect the trains to stop for him. What was said in Connelley v. Pennsylvania R. Co., 3 Cir., 201 F. 54, 56, 47 L.R.A.,N.S., 867, with regard to trackwalkers, is equally applicable to signalmen: " * * * it follows from the nature of such employment that the duty of self-preservation has to

rest on them, for no adequate protection, other than self-protection, can be afforded them." See, also, Chesapeake & Ohio Ry. Co. v. Nixon, 271 U.S. 218, 219, 46 S.Ct. 495, 70 L.Ed. 914.

However, plaintiff contends that in any event the lower court erred in not submitting the question of liability to the jury with instructions upon the doctrine of last clear chance. Plaintiff states in her brief that "decedent through his own negligence had placed himself in a position of peril and was oblivious of the impending danger through inattention; that the appellee knew of his situation, realized, or had reason to realize, that he was inattentive and therefore unlikely to discover his peril in time to avoid harm and thereafter the appellee was negligent in failing to utilize with reasonable care a competent and existing ability to avoid harming decedent." Plaintiff places great stress upon the fact that the engineer testified that had he applied the emergency brakes at the time he made the service application and blew the whistle for the second time— that is, when the train was approximately a quarter of a mile distant from decedent— he could have stopped the train in about 1,000 feet and thus have avoided striking decedent. She contends that the engineer, upon seeing the decedent in the act of removing the speeder, should have realized that he was in a perilous position and have then and there applied the emergency brakes. In her brief she states that the engineer "took the chance of decedent getting off the track before the train reached him without any reason to believe decedent would do so". The following testimony is important in this connection:

"Q. Mr. Lamphier, at the time you blew the second signal when you were a quarter of a mile away about, Mr. Deere then being at the landing—that is correct, isn't it? A. Yes.

"Q. Did Mr. Deere have time in the ordinary course of the way those things go to then have time to get his speeder off? A. Oh, yes, I figured he had plenty of time to get it off then. I have had a lot closer calls than that and knowed them to get them off."

At another point:

"Q. Now, if you had applied your emergency brake when you were about half a mile back with your train—A. Yes. If I had applied the emergency brake—

"Q. Yes, you would have stopped your train in the same distance, would you? A. Oh, I would have stopped it quicker, because after you give a train a service application it wouldn't stop near so quick as it will if you give it an emergency.

"Q. So if you had given it instead of the service application of the brake, if you had given the emergency—A. Yes, but there was no occasion to do it.

"Q. Yes, but he was only a quarter of a mile ahead of you. A. But he could step off any time.

"Q. He didn't step off. A. He was off and then he got back on again.

"Q. You saw him on the track. He got back on. A. Yes.

"Q. And was pushing there. A. I figured he was getting the car off all the time. You meet them every day, the same conditions."

And at yet another time:

"Q. Did you see anything that would prevent Mr. Deere from stepping aside and letting the locomotive go by? A. No. nothing at all there."

The evidence conclusively shows that the engineer acted as a reasonable man would under the same circumstances. He knew that it was the duty of the signalman to see to it that he got himself and his motorcar clear of the path of the train, and, as he testified, his experience had taught him that in the ordinary course of events there was ample time for the signalman to remove the car. Morover, he gave warnings with the whistle, made a service application of the brakes so as to allow the decedent more time in which to remove the speeder, and when it finally became apparent that the decedent was not going to get the car completely off of the tracks, he applied the emergency brakes, which retarded the speed of the train even more, thus giving the decedent added time in which to get himself out of the way. He testified that when the locomotive cut off his view of Deere (when the intervening distance was about 150 feet), so far as he could see there was still time and opportunity for Deere to step aside. The train was then moving at a rate of about fifteen miles per hour. When questioned as to why he applied the emergency brakes when he did, Lamphier answered, "I figured it [the train] was going to hit the motorcar any way if he didn't get off."

The evidence shows that decedent was fully aware of the approach of the train, and there is no foundation for the contention that he was "oblivious of the impending danger through inattention". See Rasmussen v. Fresno Traction Co., 15 Cal.App. 2d 356, 369, 59 P.2d 617. The engineer testified that when his view of the decedent was cut off by the locomotive at a distance of about 150 feet from the landing, the decedent was stooped over, shoving on the car with his side toward the train (but apparently with his head turned so that he was looking directly at the approaching train). The testimony on this point was as follows:

"A. He was standing along side of the rail, standing there looking, trying to shove the thing out the last I seen him.

"Q. With his side to you? A. Yes."

And later, when he was being interrogated relative to a picture which showed a man removing a speeder at the same landing:

"The Court: Q. Do you know whether he was looking at you like that picture shows that man looking north?

"A. Yes, he was looking toward me, see.

\* \* \* \* \*

"A. (Continuing) That made me figure he was going to step off any time.

\* \* \* \* \*

"A. (Continuing) I figured he was going to watch me that close and then he was going to step off."

 It must be kept in mind that the doctrine of last clear chance means just what the words imply and that the very essence of the rule is that it is applicable only where, notwithstanding another's negligence, the defendant, after realizing, or where under the circumstances he should have realized, that that other party cannot escape (due either to unawareness or to physical inability), has a clear chance to avoid the accident by the exercise of ordinary care. It is an absolute "requirement of the doctrine of last clear chance that the peril of the party who relies upon it be inescapable or that he be oblivious to it." Stewart v. Capital Transit Co., 70 App.D.C. 346, 108 F.2d 1, 3. See, also, Wallis v. Southern Pac. Co., 184 Cal. 662, 673, 195 P. 408, 15 A.L.R. 117. From the testimony above related, and from the evidence taken as a whole, the only reasonable conclusion

is that Deere was fully cognizant of the approach of the train. In addition, he was not in a position from which he could not extricate himself. Therefore, it follows that the defendant did not have the later chance to avoid the accident, and that the doctrine of last clear chance, then, is unavailable to plaintiff. Kansas City Southern R. Co. v. Ellzey, 275 U.S. 236, 241, 48 S. Ct. 80, 72 L.Ed. 259; McHugh v. Market St. Ry. Co., 29 Cal.App.2d 737, 743, 85 P.2d 467. Plaintiff has utterly failed to sustain her burden of showing that the deceased could not have escaped injury by the exercise of ordinary care. Young v. Southern Pac. Co., 189 Cal. 746, 755, 210 P. 259. The rule is that "Recovery is not allowable under the statute [Federal Employers' Liability Act] where it appears that the employee with knowledge of the peril failed to take action that would have prevented his being injured." 35 Am.Jur. § 406, p. 828.

 If "trainmen see a person on or near the track and there is nothing to indicate that he is unconscious of danger from the train, no duty devolves upon them to stop." 20 R.C.L. 143-144, § 117. The evidence shows that deceased was conscious of the proximity of the train and that practically up until the moment of impact he could have escaped unscathed. Consequently, there is no basis for the contention that the engineer should have realized, in due time to avert the injury, that Deere was in a position of peril of which he was oblivious. And there was certainly no justification for the signalman's remaining on the track just to prevent damage to the speeder; no one is "permitted to recover for injury sustained in attempting to recover mere property in the face of obvious danger such as no reasonably prudent man would under the circumstances incur." 20 R.C.L. 133, 134, § 110.

Nearly every case listed by appellant to support her contention that the last-clear-chance doctrine was applicable here was based upon a showing of inattentiveness or obliviousness to threatening danger on the part of the injured party. For that reason they are not controlling in the present instance. The others are clearly distinguishable upon the facts.

 In order for recovery to be allowed under the Federal Employers' Liability Act there must be evidence from which a jury could find that there was negli-

gence on the part of the defendant, which negligence was the cause of the employee's injury. Atchison, T. & S. F. R. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896.

The judgment of the District Court directing a verdict for the defendant must be Affirmed.