# VICTOR W. NICHOLAS v. HENNEPIN WHEEL GOODS COMPANY AND OTHERS.[1]

May 8, 1953.

No. 35,897.

---

[1]Reported in 58 N. W. (2d) 572.

*Mordaunt & Mordaunt,* for appellant.
*Olof L. Bruce* and *Robert W. Bruce,* for respondent.

LORING, CHIEF JUSTICE.

This is an action for personal injuries suffered by plaintiff as the result of the alleged negligence of defendants. Defendants are: Hennepin Wheel Goods Company; Manuel Gifis, president of that company; Florence Gifis, its secretary; Herbert Construction Company; and Herbert Ranum, its president. A verdict was directed in favor of Florence Gifis. The jury returned a verdict in favor of plaintiff against the Hennepin Wheel Goods Company, the Herbert Construction Company, and Herbert Ranum. There is no record of any verdict either for or against Manuel Gifis. The Hennepin Wheel Goods Company, sole appellant here, appeals from the order denying its alternative motion for judgment or a new trial, contending among other things that there is no evidence of any negligence on the part of appellant and that, in any event, there is a clear defense of contributory negligence appearing as a matter of law.

Hennepin Wheel Goods Company is a Minneapolis retail bicycle concern. In January 1947, a fire partially destroyed its store. Shortly thereafter, appellant engaged Herbert Ranum, as an individual or as a representative of the Herbert Construction Company, to clear away the fire debris and rebuild the store on a cost-plus basis. Originally their agreement was oral, but subsequently a written contract was executed. Gifis, the president of the bicycle company, apparently took quite an active part in supervising the construction work.

On the day of the accident, the work had progressed to a point where certain large beams were being installed in the basement. The beams were lifted by a mobile crane, but the directing and placing of them had to be done manually. Because of weather conditions, only a small crew turned out on that particular day. There was testimony that certain personality conflicts between Gifis and the regular laborers had caused the laborers to leave the basement area, so that immediately before the accident Ranum, Gifis, and a regular employee of the bicycle shop, who had been summoned by Gifis, were the only ones in the basement. Although Gifis testified that he was out of town on the day of the accident, the overwhelming preponderance of the evidence, plus certain inconsistencies in his own testimony, placed him in the basement at the time of the accident.

Plaintiff in this action happened to be a spectator of the construction work. Apparently, he was there to see the contractor, Ranum. Plaintiff offered some advice on the work and was then asked by Gifis to come down into the basement and assist in setting the beams. One of the men in the basement was holding a rope fastened to one end of the beam to keep it from swinging. Gifis directed plaintiff to hold the other end of the beam, apparently to guide it. Just as plaintiff took hold of it, some one signaled to the crane operator to lift the beam. The beam suddenly jerked, knocking plaintiff down and inflicting the injuries complained of. It was plaintiff's contention, which is supported by the evidence, that the sudden movement of the beam which caused his fall resulted

from the fact that the sling around the center of the beam which was attached to the crane hook was improperly fastened. This permitted the beam to twist and slip after being slightly lifted. It is not clear from the record which of the other men in the basement actually hooked the choker on the beam or who gave the signal to raise the beam.

■ The first question to be determined is the relationship of plaintiff to the Hennepin Wheel Goods Company. The evidence surrounding plaintiff's being called into the basement adequately supports a finding of employer-employee relationship between plaintiff and the Hennepin company. See, Brown v. Murphy Transfer & Storage Co. 190 Minn. 81, 85, 251 N. W. 5, 7. Construing the evidence in the light most favorable to plaintiff, this is the only relationship the record will support.

■ The workmen's compensation act does not apply to the situation, since construction work was certainly not the usual business of the Hennepin company and the employment of plaintiff could only be deemed "casual." M. S. A. 176.05. Thus, recovery must be predicated upon the common law.

■ Respondent seems to urge affirmance on the basis of Gifis's negligence. Thus, respondent states in his brief:

"The accident and injuries to respondent occurred as a direct result of the negligence of Manuel Gifis who represented the appellant, and he, and he alone, created a dangerous situation which resulted in the injuries complained of."

However, the fact remains that the jury did not return a verdict against Gifis personally. Interpreted under the charge, the absence of a finding against Gifis would indicate that the jury found no negligence on his part. To return a verdict against the corporation, based on Gifis's negligence, without returning a verdict against Gifis would render the verdict perverse. Bell v. N. P. Ry. Co. 112 Minn. 488, 128 N. W. 829; Begin v. Liederbach Bus Co. Inc. 167 Minn. 84, 208 N. W. 546; Tiedje v. Haney, 184 Minn. 569, 239 N. W. 611; Ayer v. C. M. St. P. & P. R. Co. 187 Minn. 169, 244 N. W. 681.

In the absence of a verdict against Gifis, in order to support the verdict of the jury the record must disclose negligent conduct on the part of someone and, furthermore, it must disclose that that someone was, at the time of the accident, the servant of the Hennepin Wheel Goods Company so as to impose vicarious liability on the company for that negligence. Under the evidence, that someone would have to be Ranum. Although there was the other unidentified employee of the Hennepin Wheel Goods Company in the basement, the evidence is so vague as to his conduct that any finding of negligence on his part could not be sustained.

■ What was the relationship of Ranum to the Hennepin Wheel Goods Company? Was he a servant of the company so that the law may impose vicarious liability on the company for his negligence? The evidence abundantly supports the proposition that there were two bosses on this job—Ranum and Gifis. Generally the type of work in which Ranum was engaged is performed by an independent contractor, and there were many incidents of an independent-contractor relationship present such as payment of the workmen by Ranum. But the real test of the distinction between an independent contractor and an employee is the matter of *control* (Carter v. W. J. Dyer & Bro. 186 Minn. 413, 243 N. W. 436), so that even though all other characteristics of an independent-contractor relationship are present, if the employer retains the right of control over the details of the work, the law may impose vicarious responsibility on him for the torts committed by the workmen within the scope of their employment. See, Rochester Dairy Co. v. Christgau, 217 Minn. 460, 14 N. W. (2d) 780; Willner v. Wallinder Sash & Door Co. 224 Minn. 361, 28 N. W. (2d) 682; Karas v. Klein (D. C.) 70 F. Supp. 469. There is ample evidence to support a finding by the jury of a retention and exercise by Gifis of that degree of control which would impose responsibility upon his company, and there can be no doubt that in these actions Gifis was acting as an agent of appellant company and in its interests.

■ The next question then is whether Ranum was personally negligent toward plaintiff. Under the evidence, there are two pos-

sible bases for a finding of negligence: (1) That Ranum was responsible for not having enough men on the job; or (2) that Ranum negligently hooked up the choker.

Although Gifis undoubtedly had the final word regarding operations, Ranum nevertheless retained a degree of supervisory control and responsibility, especially as to the mechanics of the work. Thus, under the evidence construed most favorably to plaintiff, the prevailing party, the record supports a finding by the jury that the responsibility for having the requisite number of competent men was still Ranum's and that there was not the proper number of competent men on the job. However, according to this theory, the evidence also shows a clear defense of assumption of risk present as a matter of law, since the very reason for plaintiff's being called into the basement was the shortage of help. From the evidence, it is inescapable that this condition was known to plaintiff. See, Manore v. Kilgore-Peteler Co. 107 Minn. 347, 120 N. W. 340; Marshall v. C. R. I. & P. Ry. Co. 131 Minn. 392, 155 N. W. 208; Lake v. Shenango Furnace Co. (8 Cir.) 160 F. 887.

■ As to the second basis for finding negligence, the record does not support a finding that Ranum personally hooked up the beam. There is no direct question and answer on this important point. The only reference that appears to be of assistance is the following question and answer:

"Q. *You* had a choker that *you* hooked in the hook?

"A. [Ranum]: Yes." (Italics supplied.)

Taken in context, it is our opinion that the question is a method-information question, *i. e.,* the question was asked to determine the usual procedure in hooking up the beams and the "you" was not directed at Ranum personally but referred to the group.

The record does support the conclusion that someone hooked the beam up wrong and also that that someone was an employee of the Hennepin Wheel Goods Company. However, that someone might just as well have been Gifis, and, in view of the absence of a finding against Gifis, it is merely conjectural that one of the other people

in the basement hooked up the beam.[2] A verdict resting upon mere possibility, speculation, and conjecture cannot stand. See, Minneapolis Sash & Door Co. v. G. N. Ry. Co. 83 Minn. 370, 86 N. W. 451; State v. James, 123 Minn. 487, 144 N. W. 216.

In the absence of a verdict against Gifis and in the light of respondent's contention that the negligence involved was that of Gifis "alone," we feel it to be in the interest of justice to award a new trial.

■ There is one instruction that is challenged here, and the same problem will undoubtedly arise on a new trial. It appeared that one of the witnesses had been convicted of a crime. The trial judge instructed the jury to the effect that the conviction is to be considered only where there is a conflict in the witness's testimony. Appellant did not ask any correction of this possibly inadvertent error at the conclusion of the charge, and therefore any error committed would probably not require a new trial. However, to avoid any repetition of error, we hold that under the statute a conviction may be proved to affect the general credibility of the witness and its effect should not be limited to instances where there is a conflict in the witness's testimony. M. S. A. 610.49.

Order reversed and new trial granted.

---

[2] It would appear that whoever hooked the beam might well have been a fellow servant, even though he ordinarily served in a supervisory capacity; but there was no reference to such a defense. See, Novotny v. Bouley, 223 Minn. 592, 27 N. W. (2d) 813.