John CONOVER, Appellant,

v.

NORTHERN STATES POWER
COMPANY, Respondent.

No. 51529.

Supreme Court of Minnesota.

Dec. 17, 1981.

Dosland, Dosland & Nordhougen and J. P. Dosland, Moorhead, for appellant.

Jardine, Logan & O'Brien, Donald M. Jardine and Kent F. Charpentier, St. Paul, for respondent.

SIMONETT, Justice.

In this case we consider the duty of care owed by one who possesses land to an employee of an independent contractor hired by the landowner. The trial court set aside a verdict for the plaintiff employee, holding the landowner-employer was not liable to the independent contractor's employee as a matter of law. We reverse the judgment notwithstanding the verdict, and we affirm the conditional order for a new trial but only as to liability.

Plaintiff-appellant John Conover was injured on August 12, 1977, while working on a powerline owned and operated by defendant-respondent Northern States Power Company (NSP). Conover was an employee of Donovan Construction Company (Donovan), an independent contractor hired by

NSP to move some secondary lines from old poles to new, taller poles. Conover was on one of the old poles when it broke at its base and he fell to the ground. He received workers' compensation benefits from his employer, Donovan, and then brought this third-party action against NSP pursuant to Minn.Stat. § 176.061, subd. 5 (1980). Donovan was not made a party to the action.

The trial court refused to give plaintiff's requested instructions on the duty of care owed by a possessor of land and by an employer of an independent contractor and instead submitted the case on a general instruction defining negligence. The jury found NSP's negligence contributed 75% to plaintiff's injuries and Donovan's negligence (also submitted to the jury although it was not a party) 25%. Plaintiff Conover was found free from negligence. Damages of $300,000 were assessed by the jury.

On post-trial motions the court granted NSP judgment notwithstanding the verdict, and, in the event this judgment were vacated, a new trial. Plaintiff Conover appeals. The issues here are whether the trial court erred in holding: (1) that NSP, in effect, was not liable to plaintiff for any *personal* negligence as a matter of law; (2) that NSP as a matter of law was not *vicariously* liable to plaintiff for the negligence of its independent contractor; and (3) in granting a conditional new trial.

We first need to look more closely at the facts. Early in 1977 NSP determined that one of its feeder lines in a West St. Paul alley had to be upgraded and divided into two feeder lines. An employee of NSP examined the existing line, determined what materials were necessary and prepared an instructional sketch to be followed by the workers doing the upgrading. Five old poles that had been installed in 1936 were to be replaced. It was the testimony of NSP's construction field supervisor that the decision to replace the poles was dictated by the upgrading to a heavier, three-conductor line and not by the condition of the poles to be replaced.

Although NSP had the necessary expertise to do the work, its own employees were otherwise busy, so it hired Donovan to do the work. Donovan, a firm specializing in utility line construction work, had often been hired by NSP in similar situations in the past. The contract between the parties gave Donovan complete control and supervision of the project. Donovan's crew on this project consisted of a foreman and two linemen, one of whom was Conover. Conover, a lineman with 14 years' experience, was on the jobsite for the first time the morning of the accident, arriving after work was underway.

The job to be done involved transferring the secondary and service lines from the old pole to a new, taller pole that had already been erected near the old pole. When Conover arrived, the primary wire had already been removed from the old pole and the new replacement wires were in place on the new pole. Conover and his fellow lineman decided that Conover would climb the old pole while the other lineman would work on the new poles from an elevated bucket. The job foreman was aware of this procedure and did not object. Since Conover knew he was climbing an old pole, he tested it for stability by a visual inspection and by sounding with a hammer. The hammer sounding indicated to Conover that the pole could be climbed safely, but the visual inspection revealed shell or surface rot for some distance upward from the base of the pole. Conover decided to climb the new pole and to transfer to the old pole at the level of the telephone cable to avoid any slipping that the surface rot might cause. Upon reaching the top of the old pole, Conover unhooked the service and secondary lines from the old pole and hooked them to the elevated bucket operated by the other lineman. He was in the process of transferring himself back to the new pole to climb down when the old pole gave way, carrying Conover with it to the ground. An inspection then revealed the pole had rotted through and broken somewhere between ground level and about 12 inches below ground level.

Conover testified that he had made the decision the old pole was safe to climb

above the shell rot because (1) it "sounded right" when struck by a hammer; (2) there were indications the pole had been climbed at least twice before in the course of the job; (3) he was not told that the pole had not been inspected before reconstruction started; (4) the stated reason for replacement of the poles was a change in primary lines rather than any deteriorated condition of the poles, and no one informed him that the poles were old and possibly dangerous; (5) the normal and customary procedure of utility companies is to have poles checked by a ground crew before the work is contracted out; and (6) the recommended practice for power companies is to inspect poles on an annual basis.

On the other hand, while there was evidence that probing the base does not always reveal heart rot, there was other evidence that sounding, alone, does not necessarily indicate the condition of the pole beneath the ground. Conover admitted that once the secondary and service lines were removed from the old pole, it lacked any lateral support and that there were other safer procedures he might have followed to do his work at the top of the old pole.

The union representative who investigated the accident testified that he was told by the crew foreman that the pole had been inspected by hammer sounding and screwdriver probing before the pole was climbed. He could not ascertain who in the crew had performed this inspection. The crew foreman was deceased and the second lineman was unavailable at the time of trial.

The trial court granted judgment notwithstanding the verdict on the sole ground that NSP as the employer of Donovan, an independent contractor, could not be held liable to Conover, who was Donovan's employee. While the trial court did not address the issue of NSP's liability for its own negligence, implicit in the court's ruling is that NSP was not personally negligent as a matter of law.

## I.

We first take up the implicit ruling of the trial court that NSP, as a matter of law, was not personally negligent.

■■■ The applicable standard to be applied by the trial court in determining the propriety of granting a motion for judgment notwithstanding the verdict is whether there is any competent evidence reasonably tending to support the verdict. *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975). Such a motion "admits every inference reasonably to be drawn from the evidence as well as the credibility of the testimony of the adverse party." *Id.* Only where the facts are undisputed and reasonable minds can draw but one conclusion from them does the question for determination become one of law for the court. *Kramer v. Kramer*, 282 Minn. 58, 65, 162 N.W.2d 708, 713 (1968).

■■■ 1. At the outset it should be noted the parties agree that an employer of an independent contractor is liable for any personal negligence on his part which causes injury to an employee of the independent contractor. This personal negligence, in an appropriate case, may consist of breach of a duty to exercise reasonably careful supervision of a jobsite where employees of the independent contractor are working when the employer retains control or some measure of control over the project. *See Thill v. Modern Erecting Co.*, 272 Minn. 217, 136 N.W.2d 677 (1965), adopting Restatement of Torts § 414 (1934). Even where the employer retains no control, he may still owe a duty of care, as a possessor of land, to persons coming on the premises, including the employees of an independent contractor. Ordinarily this duty would be to inspect and to warn before turning over the jobsite. *See Whirlpool Corp. v. Morse*, 222 F.Supp. 645 (1963), *aff'd*, 332 F.2d 901 (8th Cir. 1964) (employer personally liable for injuries to repair contractor's employee).

At oral argument NSP acknowledged it could be liable for its own negligence; it was NSP's position, however, that the facts do not warrant imposition of personal liability. It is undisputed that NSP retained no control over the project and therefore had no duty of project supervision. NSP then

argues it owed no duty to inspect the poles or to warn Conover, since Conover and Donovan had their own duties to inspect and did not need a warning of a danger or hazard they were just as well aware of as NSP.

■ We disagree with NSP that it breached no personal duty to Conover. There was considerable evidence on the different responsibilities and inspection procedures of NSP as the utility company, Donovan as the electrical construction independent contractor, and Conover as the contractor's employee. Considering that evidence under the general negligence instruction given by the court, the jury could have properly concluded that NSP knew or ought to have known that the old pole was so defective it might collapse if someone climbed it. NSP alone knew the age of the poles and their inspection history. The jury might have further concluded that the practice of independent contractors to inspect poles in such a way as to reveal this particular defect is not so routine as to be reasonably expected and that as a result NSP breached a duty it owed to Conover, as a person coming on its premises, to inspect, repair or warn of defects in the pole. Our inquiry here, as already mentioned, is only whether there is any competent evidence tending to support the verdict against NSP. We hold there is.

■ 2. As the possessor of land, NSP had a duty to use reasonable care under the circumstances then existing, without regard to whether the entrant is a licensee or invitee. *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972). It is clear the trial court should have given the requested jury instruction, 4 Minn. Dist. Judges Ass'n, Minnesota Practice, JIG II, 330 G–S (2d ed. 1974).[1] Since, however, the general instruction on negligence required the jury to con-

sider all of the circumstances involved in causing the injury and counsel were free to argue, and did argue, their respective positions on these facts and circumstances to the jury, we find, in the context of this trial, no reversible error in not giving JIG 330 G–S.

3. One other issue, an evidentiary ruling of the trial court, remains to be discussed in connection with NSP's own duty of care. NSP claims the trial court erred in permitting plaintiff Conover's expert, William Mazer, to testify and interpret a part of Rule 214 of the National Electrical Safety Code on inspection by utilities of their lines and equipment.[2]

Rule 214 provides, in part, "Lines and equipment shall be inspected from time to time at such intervals as experience has shown to be necessary," and "[w]hen considered necessary, lines and equipment shall be subjected to practical tests to determine required maintenance." Under Minn.Stat. § 326.243 (1980), this portion of the Code is *prima facie* evidence of accepted safety standards. The rule was read to the jury and characterized by the trial court as a statute.

Mazer was permitted to testify that industry sources and the Rural Electrification Administration typically call for "detailed pole inspections in the range of every ten years as a maximum," and that this inspection would involve "boring and analysis of the boring." Over objection, Mazer further testified that a 20-year absence of inspection would be a violation of the National Electrical Safety Code and that in his opinion the utility could have and should have remedied any defect by a "single thorough inspection" of the line before Donovan started its work.

Minn.R.Evid. 704 provides: "Testimony in the form of an opinion or inference oth-

---

1. *See* footnote 6 *infra* and supporting text.

2. Respondent argues that the terms "lines and equipment," as used in the National Electrical Safety Code, do not include poles, and therefore the Code does not apply. For this NSP points to the code's definition: "electrical supply equipment (supply equipment). Equipment

which produces, modifies, regulates, controls, or *safeguards a supply of electrical energy.*" But further definition is found in the following paragraph: "electrical supply lines (supply lines). Those conductors used to transmit electrical energy *and their necessary supporting or containing structures.*" (Emphasis added.)

erwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The Committee Comment, however, indicates an opinion ordinarily should be limited to one of fact: "[A] distinction should be made between opinions as to factual matters, and opinions involving a legal analysis or mixed questions of law and fact. Opinions of the latter nature are not deemed to be of any use to the trier of fact."

■ Is the interval of time between inspections a question of fact or a question of law? Mazer testified to how often poles should be checked for rot, basing his testimony on industry publications and his personal experience. This type of information is factual in nature, helpful to the jury, and so admissible. To give an opinion, however, that NSP's inspection practice violates the National Electrical Safety Code involves an interpretation as to the standard imposed by the Code itself, more of a legal analysis, and ordinarily should be deemed inadmissible.

Since, however, the court instructed the jury that questions of fact were their exclusive responsibility and they were to ignore all statements of law except those given by the court, we hold the characterization by Mazer of the lack of inspection as a violation of Rule 214 was not, in the context of this trial, reversible error.

■ 4. To sum up, we find that competent evidence reasonably tends to support the jury's finding that NSP's negligence contributed to Conover's injuries to the extent of 75%. Since reasonable minds could differ, the jury's conclusion should not be disturbed. *See Seidl*, 305 Minn. at 507, 232 N.W.2d at 239. Nor does failure to give the requested JIG instruction or to admit Mazer's opinion about the Code require reversal. We hold, therefore, that the trial court's granting of judgment in favor of NSP notwithstanding the verdict cannot stand, and we reverse that part of the trial court's order.

## II.

■ 1. The next issue, one of first impression in our state, is whether the employer of an independent contractor is vicariously liable, under a nondelegable duty theory, for negligence of the contractor which causes injury to the contractor's employee. We hold the employer is not.

The trial court granted judgment notwithstanding the verdict on the sole grounds that NSP, not being personally liable, could not otherwise be held liable for the negligence of its independent contractor which caused injury to the contractor's employee. Since we now hold NSP is liable to plaintiff for its own negligence, it would seem we need not reach the issue of whether NSP is also liable to plaintiff for Donovan's negligence; although only found 75% negligent, NSP would still have to pay 100% of the verdict, since its liability is joint and several with Donovan's. *See Jack Frost, Inc. v. Engineered Building Components Company, Inc.*, 304 N.W.2d 346 (Minn.1981).

Plaintiff Conover, however, argues that NSP also is "vicariously" liable to Conover for Donovan's negligence. Conover claims the trial court erred in refusing to instruct the jury on the Restatement (Second) of Torts §§ 416, 424, 427 and 428 (1965), which impose certain nondelegable duties of care on the employer of an independent contractor. (*See* appendix.) Since there will be a new trial and since in any event the characterization of Donovan's 25% negligence has a bearing on fault apportionment and secondary loss allocation, we need to decide this question.

The general rule, given in section 409 of the Restatement (Second), is that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *See also Rausch v. Julius B. Nelson & Sons, Inc.*, 276 Minn. 12, 149 N.W.2d 1 (1967). This court has long recognized the erosion of the general rule by a multitude of exceptions, observing some 40 years ago that "[i]ndeed, it would be proper to say that the rule is now primarily important as a preamble to the catalog of its

exceptions." *Pacific Fire Insurance Co. v. Kenny Boiler & Manufacturing Co.*, 201 Minn. 500, 503, 277 N.W. 226, 228 (1937). These exceptions are collected in sections 416 to 429 of the Restatement. They rest on the policy grounds that an employer should not be permitted to escape a direct duty of care for the personal safety of another by delegating that responsibility to the independent contractor for the proper conduct of certain types of work. For example, section 416 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm *to others* unless special precautions are taken, is subject to liability for physical harm caused to others by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise. [Emphasis added.]

2. The term "others," used in section 416 and the other pertinent sections, plainly enough has in mind third persons who might come upon or about the jobsite and be injured. Does "others" also include the employees of the independent contractor who have to be on the jobsite and whose work exposes them to the very hazard contributing to their injury? Authorities elsewhere are split.[3]

■ We conclude the term "others" should not be construed to include employees of the independent contractor.[4] To hold otherwise, we believe, creates needless con-

ceptual and practical difficulties and does not give due consideration to the employer-independent contractor relationship.

■ It should be kept in mind we are dealing here, by definition, with the situation where the employer is not personally liable, where the employer has done everything that can reasonably be expected. The Restatement would, if construed as plaintiff contends, nevertheless make the employer liable for the negligence of the independent contractor. This is accomplished by saying the employer's duty is of such a nature it may not be delegated to the contractor. This nondelegable duty, says the Restatement, creates "vicarious" liability. As the introductory note of the Restatement puts it, "The liability imposed is closely analogous to that of a master for the negligence of his servant." Restatement (Second) of Torts § 416 at p. 394. Ironically, however, the independent contractor also has an absolute, nondelegable duty owed to its employees to provide a safe workplace and to warn of defects and hazards in the employment. *Baumgartner v. Holslin*, 236 Minn. 325, 52 N.W.2d 763 (1952); *Grussing v. Binger*, 262 Minn. 345, 114 N.W.2d 699₀ (1962). Conceptually, at least, to adopt here the Restatement rule results in one nondelegable duty too many.

■ More to the point, however, we do not find the Restatement rationale appropriate here. The Restatement, in sections 416 and 427, imposes a nondelegable duty on an employer if the trier of fact finds the "work" involves either a "peculiar

---

3. Cases supporting the view employees of an independent contractor are "others" include *Giarratano v. Weitz Co.*, 259 Iowa 1292, 147 N.W.2d 824 (1967); *Moss v. Swann Oil Inc.*, 423 F.Supp. 1280 (E.D.Pa.1977); and *Hagberg v. City of Sioux Falls*, 281 F.Supp. 460 (S.D. 1968).

On the other hand, the trial court here relied on two federal decisions involving Minnesota accidents which hold to the contrary: *Olson v. Kilstofte & Vosejpka, Inc.*, 327 F.Supp. 583 (D.Minn.1971) (by Judge Neville), and *Vagle v. Pickands Mather & Co.*, 611 F.2d 1212 (8th Cir. 1979).

4. Plaintiff Conover argues that this court, in *Thill v. Modern Erecting Co.*, 272 Minn. 217, 226, 136 N.W.2d 677, 684 (1965), where it discussed section 414, has already recognized that employees of a subcontractor are included in the term "others." We do not think so. At best, this was a hypothetical assumption made in *Thill* to discard an issue.

The issue here, of course, is more than the narrow one of construing Restatement language. Even if the Restatement expressly said employees of independent contractors are included in "others," it would still be for us to decide if we wished to adopt such a rule.

risk" or a "special damage."[5] But the risk or danger the Restatement has in mind is one created by the independent contractor, not by the employer. It is the contractor's "work" that creates the risk. Consequently, the employer should not be held vicariously liable to someone who is injured while under the direction and control, as an employee, of the very party who creates the danger. As the Eighth Circuit Court of Appeals put it, in *Vagle v. Pickands Mather & Co.*, 611 F.2d 1212, 1218 (1979), the nondelegable duty rule was intended to prevent one from contracting out hazardous work and thereby escaping one's responsibility to the general public and adjoining property owners; but one who hires an independent contractor with employees specialized to do the hazardous work should not be penalized by being held vicariously liable for an injury to those employees.

Take, for example, this case. It was not the contractor's work that created the danger, since the pole was already rotten. The "work," rather, brought the contractor's employee to the preexisting danger. Liability, then, is best determined by having each party responsible for its own conduct. Here the employer, the independent contractor and the employee each had separate and different duties of care, duties which might be concurrent in some respect, but duties that did not, as for the employer and the contractor, merge into the sole negligence of the employer. For example, on the duty to inspect, NSP had a personal duty to inspect its poles for rot every 5 to 12 years and probably a duty to inspect and to warn before turning the job over to the contractor. Donovan had a duty to inspect before starting the project, as well as a continuing onsite duty to inspect and to warn. Conover had a duty to inspect a pole before climbing it. The scope of each duty varied: NSP's duty included boring a core of wood out of the pole to check for rot, while the duty of the contractor and the employee required a less thorough technique, like sounding the pole with a hammer or perhaps poking with a screwdriver.

3. To extend the nondelegable duty rule to an independent contractor's employee would raise other problems with fault apportionment and loss allocation. Under the Restatement rule, it would be said that Donovan's 25% negligence consisted of Donovan's breach of NSP's nondelegable duty of care for the safety of Donovan's employee. If this be so, there are some troublesome consequences. Assume plaintiff had also sued the supplier of the pole on a products liability claim. If NSP's duty is labeled "nondelegable," it might be argued that Donovan's negligence should be aggregated with NSP's for the purpose of comparison with the supplier's fault, and that it might also be aggregated for the purpose of comparison with the plaintiff's own fault. Moreover, for the purpose of determining a contractor's contribution under *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977), the jury would have to distinguish, in appropriate cases, between the contractor's breach of his own duty and his breach of the employer's nondelegable duty. We do not think it desirable, nor necessary, to introduce these kinds of problems into the fault apportionment process here.

4. If the employer were to be held vicariously liable for the fault of the contractor, then, argues NSP, the employer should have the same immunity from an employee's suit as is afforded the contractor under the Workers' Compensation Act. Particularly should this be so, argues NSP, since the employer, in effect, is paying the workers' compensation insurance premiums of its hired independent contractor. Since we have concluded the nondelegable duty doc-

---

5. "Peculiar risk" as used in section 416 is defined at length in section 413, Comment b. "Special danger" as used in section 427 is defined in Comment b of that section.

The introductory Note preceding section 416 of the Restatement (Second) at page 394, observes, "The various rules stated tend, to a remarkable degree, to overlap." After further observing that courts tend to give sections 416 to 429 in either a selective or wholesale fashion, the Note concludes, "This has made for a great deal of confusion, and some uncertainty as to the law in many jurisdictions."

trine is not to apply, we need not concern ourselves with this argument. We observe, however, payment of insurance premiums in this situation, like NSP's indemnification agreement with Donovan, is a matter of bargaining between the employer and the contractor and should have no effect on employee Conover's right to sue NSP.

■ Nevertheless, the presence of workers' compensation is a consideration in loss allocation. In *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977), we were concerned about the third-party tortfeasor who alone had to pay damages to the injured worker while the worker's employer, even though negligent, was immune from suit. We said, "[T]he third party is forced to subsidize a workers' compensation system in a proportion greater than his own fault and at a financial level far in excess of the workers' compensation schedule." 312 Minn. at 120, 257 N.W.2d at 684. We fashioned some relief by giving the third-party tortfeasor contribution against the worker's employer to the extent of compensation benefits paid. Here, to adopt plaintiff's position would be to compel the third-party tortfeasor, who is now the employer of the independent contractor, to subsidize the workers' compensation system when he is not at fault at all.

5. The important public policy to be fostered is to create a safe workplace. Plaintiff argues this may best be accomplished by putting a nondelegable duty on the employer to make the jobsite safe. Here, though, it would seem the employer's exposure for his own personal fault to the contractor's employee is sufficient incentive for the employer to hire a competent contractor and to take needed precautions. Any nondelegable duty that might be additionally imposed could still be avoided where the employer has sufficient bargaining power to obtain an indemnity agreement from the contractor. In addition, interjecting a nondelegable duty into this basic relationship may create a disincentive for safety. The contractor, who is supposed to be on the jobsite supervising, may have less incentive to provide a safe workplace if the employer is indirectly paying his workers' compensation premiums and, in addition, the contractor has subrogation rights against the employer.

■ 6. While our decision deprives the injured employee of the nondelegable duty theory of recovery, the effect of this deprivation is probably more theoretical than real. In many cases, as in this case, a personal duty of the employer is present. As a possessor of land, the employer has a personal duty to use reasonable care to inspect and to warn so as to protect persons coming on the premises "from an unreasonable risk of harm caused by the condition of the premises while he is on the premises." 4 Minn. Dist. Judges Ass'n, Minnesota Practice, JIG II, 330 G–S (2d ed. 1974); *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972).[6]

■ Under this instruction the jury could have found NSP should have inspected the poles before Donovan's crew came on the premises, and failure to do so was a cause of injury to Conover.[7] If NSP had retained any control of the premises (it appears it did not), plaintiff would have

---

6. The instruction goes on to say:
   In determining reasonable care of the landowner, the following factors may be considered:
   1. The purpose for which the entrant entered the premises;
   2. The circumstances under which the entrant entered the premises;
   3. The use to which the premises is put or expected to be put;
   4. The foreseeability or possibility of harm;
   5. The reasonableness of the inspection, repair or warning;

   6. The opportunity and ease of repair or correction or the giving of the warning.

7. Not every employer of an independent contractor is a sophisticated utility like NSP. The employer may be an individual homeowner, for example, who hires an independent contractor *to work on his house. Often the contractor is* hired because he has the very expertise and equipment to do the work that the homeowner lacks. Under JIG 330 G–S the trier of fact takes this expertise or lack of it into account.

been entitled to a further instruction on duty to supervise commensurate with the control retained. *Thill*, 272 Minn. 217, 136 N.W.2d 677 (1965). On the other hand, NSP would not have had a duty to inspect or to warn of a defect or danger the employee was engaged to correct. *Marshall v. Chicago, R. I. & P. Ry. Co.*, 131 Minn. 392, 155 N.W. 208 (1915). Under such instructions, however, plaintiff would be free to argue to the jury—and did so here, effectively—that Donovan was not hired to correct or replace rotted poles but only to upgrade the system with different lines and new, taller poles. The jury would also be told Donovan had a duty to use the reasonable care that a reasonably prudent electrical utility contractor would use to provide for the safety of its employees. And the jury would be read, as it was here, the pertinent parts of the construction contract. This approach, it seems to us, is fair, certainly more understandable to a jury, and avoids confusion in applying principles of contribution and comparative fault.

7. We hold, therefore, an employer of an independent contractor does not owe a nondelegable duty of care to the contractor's employees for the negligence of the contractor, and the trial court properly refused to instruct on sections 416 and 427 of the Restatement.

Appellants also urge it was error for the trial court not to instruct on Restatement sections 424 (precautions required by statute or regulation) and 428 (work which cannot lawfully be done except under a franchise). Both of these sections again create nondelegable duties of the employer to "others." For the reasons already stated, we do not consider these sections applicable to the case here and we hold the trial court properly refused to so instruct.

### III.

The trial court also ruled that if its order granting defendant judgment notwithstanding the verdict were set aside—and this we have now done—defendant NSP is granted a new trial. Appellant Conover claims the order granting a new trial should be reversed and his verdict reinstated; NSP claims the order is not appealable and is not here for review. We affirm the order granting a new trial but on liability only.

The trial court order and memorandum say only, "The conditional alternative relief granted herein is based upon evidence of conduct establishing negligence on the part of plaintiff which contributed substantially to his injury."

Appellant Conover argues this statement must be read as saying the new trial is based upon evidence of conduct establishing *as a matter of law* negligence on the part of the plaintiff. If this is so, appellant's argument continues, the trial court is granting a new trial for an error of law, which is reviewable here. And, concludes appellant, the alleged error is not error because it cannot be said Conover was causally negligent as a matter of law. NSP, on the other hand, contends the trial court's order is simply an exercise of the trial court's discretion in determining whether to grant a new trial on grounds that the evidence does not justify the verdict and is not to be disturbed.

We were confronted with much the same problem in *McCormack v. Hankscraft Co., Inc.*, 278 Minn. 322, 343, 154 N.W.2d 488, 503 (1967), where we held:

> [W]here, as here, a conditional order granting a new trial is based in whole or in part upon the insufficiency of the evidence and such issue is also raised and determined on review of the order granting judgment n. o. v., we will, if we deem the interests of justice require, review the order in its entirety.

We believe the new trial order is reviewable here. *See also* Minn.R.Civ. App.P. 105.01. While the trial court's memorandum and order is not as clear as it might be, it appears the trial court is saying that, in the exercise of its discretion, the jury's finding of no negligence on plaintiff Conover is not justified by the evidence—a question of fact rather than of law.

The standard of review, then, is that set out in *Koenig v. Ludowese*, 308

Minn. 380, 243 N.W.2d 29 (1976). The trial judge, who has the feel of the trial, is in the best position to know if justice is best served by submitting the evidence to another jury. While having the broadest possible discretion, the trial judge "should exercise the authority granted in Rule 59.01(7) with reluctance and caution, particularly in cases where there are no expressed and articulable reasons, based upon demonstrable circumstances or events, which support a conclusion that injustice has been done." *Id.*, 308 Minn. at 384, 243 N.W.2d at 31. Ordinarily a new trial for insufficiency of the evidence should not be granted "where the preponderance of the evidence fails to suggest clearly jury mistake, improper motive, bias, or caprice." *Id.*

▉ We have already said there is credible evidence in this case to support the verdict against NSP and that any deficiencies in the jury instructions and evidentiary rulings did not rise to the level of reversible error. Yet there appears to be a clear suggestion in the record, considering the sharply disputed factual issues as viewed under generalized instructions on negligence, that the jury was mistaken in its evaluation of Conover's conduct. For example, the jury put 25% negligence on Donovan Construction Company, even though the conduct of Donovan, a nonparty, was measured by that of its employees, one of whom was Conover, the only member of the work crew to testify; and yet the jury found Conover not negligent.

While the question is a close one, we believe we should defer to the presiding trial judge to whom is given, although to be exercised with caution, the "broadest possible discretionary power." *Ginsberg v. Williams,* 270 Minn. 474, 135 N.W.2d 213 (1965). We see nothing in the record, however, to suggest a new trial need extend to the issue of damages, and the verdict on damages, therefore, shall stand. The trial court's conditional order granting a new trial is affirmed, but on liability only.

Reversed in part and affirmed in part.

APPENDIX

Restatement (Second) of Torts §§ 416, 424, 427 and 428 (1965) provide:

§ 416. Work Dangerous in Absence of Special Precautions

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

§ 424. Precautions Required by Statute or Regulation

One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

§ 427. Negligence as to Danger Inherent in the Work

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

§ 428. Contractor's Negligence in Doing Work Which Cannot Lawfully be Done Except Under a Franchise Granted to His Employer

An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for

physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.

WAHL, Justice (concurring in part, dissenting in part).

The jury found that Donovan was negligent and that Conover was not negligent. On the record before us and under the instructions given, the jury could have found that Donovan, which had been in direct contact with NSP concerning this project and had been on the jobsite for the duration of the project, knew or should have known that the pole might be defective and that it had not been inspected for heart rot. The jury could have concluded that Conover, who was on the jobsite for the first time on the day of the injury and who could see that work on the pole had been done, could not reasonably have been expected to know that the pole might be defective and that it had not been properly inspected.

The evidence would not support a finding that Conover was contributorily negligent as a matter of law. "We have said repeatedly that it is only where the evidence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable men that the court can enter upon the province of the jury to direct a verdict for the defendant." *Krueger v. Knutson*, 261 Minn. 144, 153, 111 N.W.2d 526, 532 (1961) (citations omitted).

The trial was properly conducted. We have found no errors of law occurring at the trial prejudicial to respondent. Damages are not claimed to be excessive. I can find no reason to sustain the order for a conditional new trial even as to liability and would reverse with directions to enter judgment upon the verdict.

TODD, Justice (dissenting).

I join in the dissent of Justice Wahl.

YETKA, Justice (dissenting).

I join in the dissent of Justice Wahl.

SCOTT, J., took no part in the consideration or decision of this case.