674 N.W.2d 748 (2004)
Jeffrey ANDERSON, et al., Appellants,
v.
STATE of Minnesota, DEPARTMENT OF NATURAL RESOURCES, Respondent,
John Doe, Defendant,
Terry Ricks, d/b/a Ricks Aviation, Respondent,
International Paper Co., f/k/a Champion International Corporation, Respondent, and
Steven Ellis, Appellant,
v.
State of Minnesota, Department of Natural Resources, Respondent,
John Doe, Defendant,
Terry Ricks, d/b/a Ricks Aviation, Respondent.
No. A03-679.
Court of Appeals of Minnesota.
February 17, 2004.
*750 Stephen F. Rufer, Pemberton, Sorlie, Rufer & Kershner, P.L.L.P., and Timothy A. Rundquist, Rundquist Law Office, Fergus Falls, MN, for appellants.
Mike Hatch, Attorney General, Jerome L. Getz, Assistant Attorney General, St. *751 Paul, MN, for respondent Department of Natural Resources.
Craig E. Johnson, Johnson Ramstad & Mottinger, PLLP, Fargo, ND, for respondent Terry Ricks, d/b/a Ricks Aviation.
Alexandra B. Klass, John D. Ostergren, Sara Jane Peterson, Dorsey & Whitney LLP, Minneapolis, MN, for respondent International Paper Company.
Marci L. Iseminger (pro hac vice), Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett, Storm & Jensen, P.C., Sioux City, IA; and Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, MN, for amicus curiae Sioux Honey Association Cooperative.
Considered and decided by HARTEN, Presiding Judge; PETERSON, Judge; and HUDSON, Judge.

OPINION
HUDSON, Judge.
Appellants Jeffrey Anderson, James Whitlock, and Steven Ellis appeal from a district court grant of summary judgment in favor of respondents International Paper Company (IP) and the Department of Natural Resources (DNR).
In 1998, appellant beekeepers began noticing high bee mortalities in their beehives located at various properties across central Minnesota. Appellants claim the high bee mortalities were caused by respondents' use of the pesticide Sevin XLR Plus (Sevin) on respondents' hybrid poplar groves located approximately two to five miles from the beehives. Appellants sued respondents for trespass, nuisance, common-law negligence, and negligence per se, seeking an injunction, damages, and attorney fees. Both respondents moved for summary judgment, and the district court granted summary judgment on all claims against respondent IP and on all claims against respondent DNR, except for a portion of appellants' negligence claim. On appeal, appellants argue that the district court erred in dismissing the negligence per se claim, because respondents were negligent per se for spraying Sevin in violation of the product label and Minnesota's Pesticide Control Act, Minn.Stat. §§ 18B.01-18B.39 (2002). Additionally, appellants argue that the district court erred in dismissing the common-law negligence and nuisance claims. We affirm in part and reverse in part.

FACTS
Appellants are beekeepers who have raised bees in central Minnesota for many years. Appellants' beekeeping operations consist of thousands of hives of bees placed in various locations in Douglas, Pope, Todd, Stearns, Otter Tail, and Morrison counties. Appellants do not own the land where their beehives are located. Rather, to use the land, appellants give landowners either "thank-you honey" or a small amount of money.
By nature, honeybees forage, feeding on nectar and pollen obtained from blooming flowers and weeds. Flower nectar is converted to honey. In the summer, appellants' bees forage a radius of three to five miles from their hives, pollinating crops and plants in central Minnesota. In the winter, the bees are transported to California, where they pollinate crops such as almonds, cherries, and apples.
Cultivation of hybrid poplars began in west-central Minnesota in the late 1980s. At that time, the cultivation was almost exclusively on Conservation Resource Program *752 lands (CRP). Under CRP rules, landowners are allowed to enter into agreements with the federal government by which landowners agree not to harvest any crops from the CRP lands during a defined period in return for cash payments.
In 1993, the DNR and the Alexandria area Resource Conservation and Development Council developed a proposal for "the Scale Up Project" (the project). One of the major goals of the project was to determine whether it would be economically feasible to grow hybrid poplars as a cash crop for biomass fuel to be used in electricity generation. Another major goal was to determine whether hybrid poplar cultivation would be economically beneficial to area landowners and would stimulate the local economy. Similarly, in 1995, IP developed several groves of hybrid poplar trees in order to provide a consistent source of pulp for its operations. In 1997, the DNR began to notice a significant infestation of cottonwood leaf beetles (CLB) in the project poplar groves. IP began experiencing the same problem in 1998.
Ron Stoffel, a DNR employee who was responsible for the project, determined that it was necessary and appropriate to use pesticides to stop this infestation. Stoffel knew of two types of insecticides that might be effective against the CLB, Bascillus Thuringiensis (BT) and carbaryl, more specifically the commercial product Sevin XLR Plus (Sevin). Sevin is toxic to bees even if they are not directly sprayed with the insecticide, because, after spraying has taken place, and before the insecticide dries, foraging bees pick up pollen poisoned with Sevin and carry it back to the hive. The poison can stay active in the hive for up to a year. The DNR acknowledges that it knew BT was less toxic than Sevin to bees; but BT would only control young CLB larvae and the older CLB larvae would continue to infest the poplars. Thus, Stoffel recommended that the DNR use Sevin.
Accordingly, whenever the DNR found a CLB infestation in a project grove, it contacted the grove owner and asked permission to spray the poplars with Sevin. After the DNR secured permission, the DNR contracted with a local chemical supplier and had the poplar grove sprayed. The DNR claims that because the suppliers were specially trained and licensed to perform their work, it did not supervise the suppliers. Similarly, in the summer of 1998, IP contracted with commercial pesticide applicators to implement IP's insecticide program using both Sevin and BT.
In 1998, appellants noticed that many of their young bees and broods were dying. Appellants soon learned that Sevin was being sprayed on poplars nearby. On July 21, 1999, at the direction of Stoffel, respondent Terry Ricksa commercial applicator hired by the DNRsprayed Sevin on land owned by Dale Swanson. The land is located very close to hives owned by appellants Ellis and Whitlock. After the spraying, Ellis checked the hives and found many dead bees. Ricks stated that Stoffel said he knew the bees were present before he ordered the spraying. Stoffel denies this accusation.
On May 29, 2001, the DNR implemented a policy not to apply Sevin on any project groves without first notifying persons owning bee yards registered with the Minnesota Department of Agriculture (MDA). Appellants' bee yards are registered with the MDA.
On March 19, 2002, appellants filed a complaint, asserting claims of trespass, *753 nuisance, common-law negligence, and negligence per se against IP and DNR. Subsequently, appellant Ellis dismissed his claim against IP, leaving only Anderson and Whitlock with actions against IP. Ellis remained a named plaintiff in the suit against the DNR.[1] IP and DNR brought motions for summary judgment on all of the claims.
The district court granted IP's motion for summary judgment in its entirety and granted the DNR's motion for summary judgment, except for the negligence claims by Ellis and Whitlock for the spraying of Sevin on Dale Swanson's hybrid-poplar grove on July 21, 1999. This appeal follows.

ISSUES
I. Did the district court err by granting summary judgment in favor of respondents on appellants' negligence per se claim?
II. Did the district court err by granting summary judgment in favor of respondents on appellants' common-law negligence claim?
III. Did the district court err by finding that whether DNR employee, Ron Stoffel, knew appellants' bee hives were located adjacent to the Swanson property presents a genuine issue of material fact?
IV. Did the district court err by granting respondents' motion for summary judgment on appellants' nuisance claim?

ANALYSIS

I
Appellants first argue that respondents DNR and IP are negligent per se for spraying the pesticide Sevin on their poplar groves in violation of the bee caution on the Sevin label.
The Minnesota Pesticide Control Act is similar to the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) and prohibits pesticide use "that is inconsistent with a label." Minn.Stat. § 18B.07, subd. 2(a)(1) (2002).
The Sevin label states:
For maximum honey bee hazard reduction, apply from late evening to early morning or when bees are not foraging. Do not apply this product or allow it to drift to blooming crops or weeds if bees are foraging in the treatment area. However, applications may be made during foraging periods if the beekeeper takes one of the following precautionary measures prior to bee flight activity on the day of treatment: (1) confine the honey bees to the hive by covering the colony or screening the entrance or; (2) locate hives beyond bee flight range from the treated area. Precautionary measures may be discontinued after spray residues have dried.
Appellants claim that respondents violated three sections of the label. First, appellants contend respondents violated the section of the label that states "[f]or maximum honey bee hazard reduction, apply from late evening to early morning or when bees are not foraging." Appellants interpret this language to mean that respondents are prohibited from spraying Sevin between the hours of 9:00 a.m. and 7:00 p.m. if the temperature is above 55 degrees. Appellants claim this is the prime time and weather condition for foraging *754 honeybees. Second, appellants contend that respondents violated the section that states "[d]o not apply this product or allow it to drift to blooming crops or weeds if bees are foraging in the treatment area." Appellants contend that this section prohibits respondents from spraying Sevin if any bees are foraging in an area with any blooming weeds before the pesticide dries. Finally, appellants claim that by not giving appellants notice of spray times, respondents violated the portion of the label that provides applications may be made during foraging periods if beekeepers take precautionary measures before sprayings.
Here, the district court found that respondents did not spray Sevin in a manner inconsistent with the label. The district court's determination was based primarily on the affidavit testimony of Paul Liemandt, director of the Minnesota Department of Agriculture Pesticide Enforcement Section (MDA), which is the state agency charged with investigating allegations of pesticide misuse. Liemandt, who has more than 15 years of experience in pesticide regulation and label interpretation, explained that the only mandatory language on the label is the section that states "[d]o not apply this product or allow it to drift to blooming crops or weeds if bees are foraging in the treatment area." Liemandt opined that the remainder of the label is advisory and discretionary. Further, Liemandt stated that the mandatory section of the label should be interpreted to mean that applicators cannot apply Sevin on a grove where: (1) a significant number of blooming crops or weeds are present; and (2) a significant number of bees are actively foraging in the treatment area. Liemandt testified that his interpretation is consistent with the Environmental Protection Agency's (EPA) interpretation of the label.
Appellants argue that this court should reject Liemandt's interpretation of the Sevin label because it is erroneous as a matter of law. But appellants offer little evidence to support this contention and offer no contrary evidence to support their interpretation of the bee-caution portion of the Sevin label. Appellants' primary argument is that Liemandt's interpretation of the label runs counter to an EPA manual for label interpretation. Appellants state that the EPA manual requires that, for Class One pesticides with Extended Residual Toxicity (ERT), the label prohibits spraying if bees are "visiting" the spray areas. But for less toxic non-ERT pesticides, the label prohibits spraying if the bees are "actively visiting" the spray area. Appellants argue that Sevin is an ERT pesticide and that "visiting," rather than "actively visiting," is synonymous with "foraging." Thus, appellants contend that unlike the term "actively visiting," the terms "visiting" and "foraging" do not require that a significant number of bees are present during or shortly after the spraying of Sevin for a violation of the Sevin label. But this argument is unpersuasive for four reasons. First, the referenced language in the EPA manual for label interpretation is general and does not specifically address the bee caution on the Sevin label. Second, the EPA manual that appellants rely on uses the terms "visiting" and "actively visiting" and the Sevin label uses the term "foraging." Third, before arriving at the MDA's interpretation of the Sevin label, Liemandt and another MDA investigator personally consulted with the EPA on the appropriate interpretation of the language in question. Finally, during his consultation with the EPA, the MDA investigator was specifically told that "foraging" meant "actively visiting" not "visiting."
*755 Further, while appellants questioned the expertise and authority of Liemandt, as an MDA official, to interpret pesticide labels on behalf of the EPA, appellants' position is not well taken. First, in Liemandt's affidavit, he explained that federal and state law give the MDA the authority to investigate and enforce pesticide activities. Indeed, the MDA is the agency directed under the Minnesota Pesticide Control Act, Minn.Stat. ch. 18B and 18D, to administer, implement, and enforce state pesticide laws. Next, Liemandt testified that the EPA has delegated authority to the MDA to administer and enforce pesticide law. See 7 U.S.C. § 136W-1 (2002) (stating that "a State shall have primary enforcement responsibility for pesticide use violations during any period for which the Administrator determines that such State(1) has adopted adequate pesticide use laws and regulations").
An agency decision is presumed to be correct, and courts give deference to the agency's expertise and special knowledge in the field of its technical training, education, and experience. Reserve Mining Co. v. Herbst, 256 N.W.2d 808, 824 (Minn.1977). The decision will be reversed only if it reflects an error of law, the findings are arbitrary and capricious, or the findings are unsupported by substantial evidence. Cable Communications Bd. v. Nor-West Cable Communications P'ship, 356 N.W.2d 658, 668 (Minn.1984).
Based on the record in this case, we are persuaded that Liemandt's expert testimony is the official agency testimony for both the MDA and the EPA and is entitled to deference. Deferring to Liemandt's interpretation of the Sevin label, we hold that the bee caution on the label only prohibited respondents from spraying Sevin when a significant number of bees were actively foraging in an area with a significant number of blooming flowers or weeds, and that the remainder of the label was discretionary. As the district court correctly noted, to hold otherwise would effectively prohibit all applications of Sevin throughout the entire growing season, as appellants assert that there are always blooming weeds and flowers in IP's and DNR's poplar groves and that bees are regularly foraging three to five miles from the bee yards.
Having determined that the only mandatory directive on the Sevin label is the section prohibiting spraying when a significant number of bees are actively foraging in an area with a significant number of blooming flowers or weeds, we must now decide whether appellants established any genuine issues of material fact as to respondents' compliance with the Sevin label. Stated otherwise, did appellants produce sufficient evidence to show that respondents sprayed Sevin in their poplar groves when a significant number of bees were actively foraging in an area with a significant number of blooming flowers or weeds?
The district court found that appellants' statements that there are always blooming plants in the poplar groves from around May 15 to freeze-up and that bees regularly forage on those plants are general averments and are not sufficient to create genuine issues of material fact on the essential elements of their case. We agree.
When reviewing a summary judgment, we find that no genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." DLH, Inc. v. Russ, 566 N.W.2d *756 60, 69 (Minn.1997) (alteration in original) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). We view the evidence in the light most favorable to the party against whom summary judgment was granted. STAR Centers, Inc. v. Faegre & Benson, L.L.P., 644 N.W.2d 72, 76-77 (Minn.2002). But "the party resisting summary judgment must do more than rest on mere averments." DLH, Inc., 566 N.W.2d at 71. Indeed, a genuine issue of material fact for trial must be established by substantial evidence. Id. at 69-70 (quoting Murphy v. Country House, Inc., 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976)).
[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.
DLH, Inc., 566 N.W.2d at 71.
Here, appellants have not met their burden. Appellants established that: their bee hives are located within a few miles of the poplar groves; respondents have sprayed the poplar groves with Sevin; and there are blooming plants in the poplar groves. This evidence, however, is not sufficiently probative to establish a genuine issue of material fact for trial on whether appellants' bees were actively foraging in the poplar groves at the time of spraying or before the spray residues had dried. Significantly, appellants provided no testimony or documentation that any of their beesmuch less a significant number of their beeswere actively foraging in the poplar groves during or shortly after spray times. Thus, they have not provided evidence of a label violation. Providing such evidence may have required appellants, for example, to engage in site visits shortly after respondents sprayed Sevin, or take pictures to show that a significant number of their bees were present in respondents' poplar groves at the relevant times. We acknowledge that collecting and producing such evidence is very difficult given the foraging nature of bees, but our summary judgment standards are no less applicable simply because gathering evidence is difficult. Here, appellants' claim came down to the mere averments that, because bees are regularly foraging in the general area of the poplar groves, the bees must have been in the grove when spraying occurred. But these general averments do not create a genuine issue of material fact, and the district court properly granted summary judgment in favor of the DNR and IP on appellants' negligence per se claim.
Because our holding resolves appellants' negligence per se claim, we do not reach the issue of vicarious liability.

II
Next, appellants argue that respondents were negligent for spraying Sevin on their poplar groves because respondents had a duty to use pesticides in a way that did not pose an unreasonable risk of harm to things that may foreseeably be affected by the pesticides.
In a negligence action, a defendant is entitled to summary judgment when the record reflects a "complete lack of proof on an essential element of the plaintiff's claim." Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn.1995). To prove negligence, a plaintiff must show (1) *757 a duty of care existed, (2) that duty was breached, (3) an injury was sustained, and (4) breach of the duty proximately caused the injury. Id. Whether a duty exists is a question of law, which appellate courts review de novo. Larson v. Larson, 373 N.W.2d 287, 289 (Minn.1985).
Minnesota courts have not addressed what duty landowners owe to bees flying over or foraging on their property. But courts in other states have held that bees foraging on the property of others are trespassing animals. See Lenk v. Spezia, 95 Cal.App.2d 296, 213 P.2d 47, 51 (1949); see also Lundberg v. Bolon, 67 Ariz. 259, 194 P.2d 454, 460 (1948) (noting that the fact that the bees were trespassing was neither pleaded as a defense nor proved; and noting that there was no evidence the bees went onto the defendants' land and ate the poison there). Lenk also held that landowners only owe "trespassing bees" the duty not to intentionally or wantonly harm the bees while on their land. The Wisconsin Supreme Court reached the same conclusion regarding the common-law duty of care, but rejected the underlying trespassing analogy. Bennett v. Larsen Co., 118 Wis.2d 681, 348 N.W.2d 540, 547-48 n. 3 (1984). The holding in Bennett differs from the Lenk holding in that the Bennett court concluded that bees should not be characterized as trespassers because the definition of a trespasser envisions an individual that the landowner can prevent from coming onto its land. Id. And landowners cannot prevent bees from coming onto their land because bees are by nature foragers that fly to and from groves wherever there is nectar or pollen. Id. Thus, the Bennett court concluded that bees are not trespassers and a landowner does not owe a common-law duty of care to bees. Nevertheless, the court held that a landowner cannot wantonly or intentionally destroy bees. Id.[2]
Appellants, on the other hand, argue that respondents owe beekeepers a duty not to use a product such as Sevin in a manner that creates an unreasonable risk of harm to entities which foreseeably may be affected by its usehere, appellants' bees. In support of their position, appellants cite Red River Spray Serv., Inc. v. Nelson, 404 N.W.2d 332, 334 (Minn.App. 1987) (spray service was negligent for aerial spraying of herbicide near farmer's property). But Red River is distinguishable from this case. Red River involved exposure to a neighboring crop resulting from herbicide overspray or drifting. Here, appellants allege their bees were exposed to Sevin while foraging on land owned by IP and the project participants, rather than as a result of the pesticide drifting off respondents' land. Appellants admit that there is no evidence suggesting that drift or overspray occurred, and, significantly, the district court made a specific finding to that effect. Thus, we conclude that Red River is not applicable to the case at hand.
Instead, we are persuaded that respondents do not owe a duty to appellants' bees. Although the case is not binding on this court, we conclude that the reasoning of the Bennett court is persuasive. While the differing theories of Lenk and Bennett *758 may often produce the same result, we believe the reasoning of the Bennett court rests on stronger legal principles. Indeed, bees do not fit into the traditional definition of trespasser because landowners have no power to prevent bees from entering onto their land. Further, we are persuaded that, as a matter of policy, a landowner is prohibited from intentionally or wantonly harming bees on his or her property.
Here, with the exception of the Swanson incident, there is no evidence and appellants have never claimedthat respondents wantonly or intentionally harmed the bees. Indeed, all of the evidence shows that both IP and the DNR sprayed Sevin solely for the purpose of stopping the CLB infestationnot to harm appellants' bees. Therefore, because appellants have not established that respondents acted intentionally or wantonly to harm the bees, we affirm the district court's grant of summary judgment to respondents on appellants' negligence claim.[3]

III
Next, we address the district court's finding that there is a genuine issue of material fact regarding whether respondent DNR was negligent for spraying Swanson's poplar grove. The district court found that if Stoffel knew bees were located near Swanson's property prior to ordering the spraying of Sevin, spraying could rise to the level of intentional and wanton conduct.
Respondent DNR argues that there is no genuine issue of material fact because Stoffel did not intentionally or wantonly harm the bees. Further, respondent argues that the DNR cannot be liable for negligence because it hired an independent contractor, respondent Terry Ricks, to conduct the actual spraying of the poplars on Swanson's property. In effect, the DNR argues that it cannot be vicariously liable to appellants for any negligence attributable to Ricks. Appellants counter by noting that the DNR nevertheless played an active role in the spraying by specifying the chemical to be used, purchasing the chemical and delivering it, and specifying the rate of application.
In Minnesota, the general rule is that the employer of a contractor is not liable for the harm caused by an act or omission of the contractor. Conover v. N. States Power Co., 313 N.W.2d 397, 403 (Minn.1981). But the Conover court recognized that many exceptions have eroded this common-law rule. Id. at 403-04.[4] *759 These exceptions rest primarily on the policy grounds that an employer should not be permitted to escape a direct duty of care for the personal safety of another by delegating that responsibility to the independent contractor for the proper conduct of certain types of worke.g., work that entails a peculiar risk of physical harm to others unless special precautions are taken. Id. at 404. Thus, the so-called nondelegable-duty rule was intended to prevent one from contracting out hazardous work and thereby escaping one's responsibility to the general public and adjoining property owners.
Minnesota courts have not squarely decided if any of the Restatement exceptions applies to an independent contractor spraying pesticides. Instructive on this point, however, is our ruling in Kellen v. Mathias, 519 N.W.2d 218, 221 (Minn. App.1994), where we stated that if spraying pesticides is an ultrahazardous activity, an employer is vicariously liable for any loss caused by the spraying. See also Restatement (Second) of Torts § 427A (1975). Moreover, other states have held that because spraying pesticides and crop dusting is so dangerous the nondelegable-duty rule applies. See, e.g., Boroughs v. Joiner, 337 So.2d 340, 343 (Ala.1976) (stating that landowner who hires independent contractor to spray pesticides cannot avoid liability); Lawler v. Skelton, 241 Miss. 274, 130 So.2d 565, 569 (1961) (explaining that owner of farmland may not delegate work of spraying of crops to an independent contractor and avoid liability); Loe v. Lenhardt, 227 Or. 242, 362 P.2d 312, 318 (1961) (holding landowner who hires contractor to spray chemicals from an airplane is liable for the resulting harm).
Although the record supports appellants' claim that Sevin is toxic to bees, none of the parties briefed or addressed at oral argument the specific question of whether spraying pesticides is an ultrahazardous activity. Nor does it appear that the district court was presented with any evidence on this issue. Accordingly, on the record before us, we are not prepared to find that the spraying of pesticides is an ultrahazardous activity. Therefore, the general rule that the employer of an independent contractor is not liable for the harm caused by an act or omission of the independent contractor applies, and the DNR is not responsible for the acts of Ricks, its independent contractor who sprayed Sevin on the Swanson property, even though he allegedly knew that appellants' bee hives were located nearby. The DNR hired Ricks, an independent contractor who had specialized knowledge and expertise in the application of pesticides. Because the DNR did not control the spray, it should not be held vicariously liable for any resulting injury to appellant's bees. Accordingly, the district court erred in denying summary judgment for respondent DNR on this issue.[5]

IV
Finally, appellants argue that respondents are liable in nuisance because respondents *760 substantially interfered with appellants' use and enjoyment of their apiary operations. The district court granted respondents' summary-judgment motion, finding that appellants were trying to turn nuisance law "on its head" by claiming that respondents created a nuisance when appellants' property (the bees) flew onto respondents' land.
Nuisance is defined by statute as "[a]nything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Minn.Stat. § 561.01 (2002). An action in nuisance "may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance." Id.
Private nuisance has been defined as "an interference with the use and enjoyment of land." W. Keeton, et al., Prosser and Keeton on the Law of Torts § 87, at 619 (5th ed.1984). "The ownership or rightful possession of land necessarily involves the right not only to the unimpaired condition of the property itself, but also to some reasonable comfort and convenience in its occupation." Id. Thus, there can be no nuisance if a party cannot show an injury stemming from an interest in land. See Am. Computer v. Jack Farrell Implement, 763 F.Supp. 1473, 1494 (D.Minn.1991). For example, the injury alleged by the appellants in Am. Computer  the deactivation of their computer-software programsis not the type of injury that courts have found to violate the nuisance statute. Id. Similarly, here, we state the obvious: bees are not land. Appellants' nuisance claim is without merit because they have failed to demonstrate an injury stemming from an interest in land. Accordingly, the district court properly granted summary judgment to IP and DNR on appellants' nuisance claim.
Because our analysis of the negligence per se, common-law negligence and nuisance claims resolves this case, we do not reach the DNR's immunity defense.

DECISION
We affirm the district court's grant of summary judgment for respondents DNR and IP on appellants' claim of negligence per se because appellants failed to establish a genuine issue of material fact as to whether respondents violated the bee caution on the Sevin label. In addition, the district court correctly found that respondents were not liable for common-law negligence because they owed no common-law duty to bees foraging or flying over their land; respondent landowners were merely prohibited from intentionally or wantonly harming the bees. Accordingly, we affirm the district court's grant of summary judgment on appellants' negligence claim. Further, the district court correctly found that respondents were not liable for nuisance, and we affirm its grant of summary judgment for respondents on this claim, as well. Finally, we reverse the district court's summary-judgment ruling regarding the "Swanson incident" and hold that the DNR was not liable for the acts of its independent contractor, Ricks.
Affirmed in part and reversed in part.
NOTES
[1] For convenience we use the term appellants when discussing the claims against IP and DNR, but Ellis is not a party to the case against IP because his bee hives are not located geographically proximate to IP's poplar groves.
[2] The Bennett court held, however, that the defendant landowners did have a duty to the plaintiff because they may have violated the Wisconsin pesticide statute by spraying in violation of the pesticide label. 348 N.W.2d at 549-50. The court concluded that the jury could have found the defendant landowners negligent per se; and therefore the plaintiffs were prejudiced by the trial court's failure to give a proper jury instruction on the negligence per se claim. Id. at 551.
[3] This holding does not apply to the "Swanson incident," discussed in the next section of this opinion.
[4] Restatement (Second) of Torts § 416 (1975) (Work Dangerous in Absence of Special Precautions); Restatement (Second) of Torts § 417 (Work Done in Public Place); Restatement (Second) of Torts § 418 (Maintenance of Public Highways and Other Public Places); Restatement (Second) of Torts § 419 (Repairs Which Lessor Is Under a Duty to His Lessee to Make); Restatement (Second) of Torts § 420 (Repairs Gratuitously Undertaken by Lessor); Restatement (Second) of Torts § 421 (Maintenance of Structures on Land Retained in Lessor's Possession Necessary to Tenant's Enjoyment of Leased Land); Restatement (Second) of Torts § 422 (Work on Buildings and Other Structures on Land); Restatement (Second) of Torts § 422A (Work Withdrawing Lateral Support); Restatement (Second) of Torts § 423 (Making or Repair of Instrumentalities Used in Highly Dangerous Activities); Restatement (Second) of Torts § 424 (Precautions Required by Statute or Regulation); Restatement (Second) of Torts § 425 (Repair of Chattel Supplied or Land Held Open to Public as Place of Business); Restatement (Second) of Torts § 426 (Negligence Collateral to Risk of Doing the Work); Restatement (Second) of Torts § 427 (Negligence as to Danger Inherent in the Work); Restatement (Second) of Torts § 427A (Work Involving Abnormally Dangerous Activity); Restatement (Second) of Torts § 427B (Work Likely to Involve Trespass or Nuisance); Restatement (Second) of Torts § 428 (Contractor's Negligence in Doing Work Which Cannot Lawfully be Done Except Under a Franchise Granted to His Employer); Restatement (Second) of Torts § 429 (Negligence in Doing Work Which Is Accepted in Reliance on the Employer's Doing the Work Himself).
[5] Because we reverse the district court's summary-judgment ruling on the ground that an employer of a contractor is not liable for the harm caused by an act or omission of the contractor, we need not reach the issue of whether the district court properly concluded that there was a material fact question as to whether respondent Stoffel knew the bees were present when he hired Ricks to spray the Swanson property.