**Daniel POTTER, Respondent,**

v.

**AMERICAN BEAN & GRAIN CORPORATION, et al., Appellants.**

Nos. C7-85-2069, C8-85-2162 and C9-85-2008.

Court of Appeals of Minnesota.

June 3, 1986.

Review Denied Aug. 13, 1986.

Louis W. Brenner, Michael L. Brutlag, Brenner, Workinger & Thompson, P.A., Edina, for respondent.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, and Donald H. Walser, Willett, Kraft, Walser, Nelson & Hetlig, Olivia, for appellants.

Heard, considered, and decided by WOZNIAK, P.J., and FOLEY and LANSING, JJ.

## OPINION

WOZNIAK, Judge.

Appellants question a special verdict in which the jury found that there was a $1,038,965 misrepresentation of assets; that the misrepresentation was material; that appellants relied on the misrepresentation; but that no damages resulted from the misrepresentation. We remand for a new trial.

## FACTS

Daniel Potter was the owner of 200 shares of stock of Midwest Bean Co., representing one-third of the total ownership interest. The other 400 shares were owned by Lee Allen and Earl Raske. In March 1983, Potter sold his 200 shares, and Raske and Allen each sold 53 shares to American Bean & Grain Corp. (giving American Bean a 51% majority interest). Potter received a 20% cash payment, with the remaining 80%

in a promissory note payable over ten years.

In September 1983, Buyer (American Bean) notified Potter that it was claiming a setoff for alleged material misrepresentations made in the sale of the stock. The misrepresentations concerned the amount, quality, and value of inventory and accounts receivable. Buyer also alleged that the projected income statement had changed from a $305,223 profit to a loss of $1,045,000 in five months. Buyer refused to pay the second installment on the note and instead paid the funds into an escrow account.

Potter commenced this action to recover the unpaid payments on the promissory note and for other consequential damages. Buyer counterclaimed, alleging that assets were misrepresented and that it was entitled to a setoff and indemnification.

Following an eight-day trial, the jury found that buyer had breached the sale agreement and awarded Potter the principal and interest due under the promissory note, plus additional damages of $37,573. The jury also found that the assets of Midwest Bean were misrepresented by $1,038,965, that the misrepresentation was material, and that buyer reasonably relied on the misrepresentation. However, the jury found that buyer did not incur damages resulting from the misrepresentation.

Potter moved the court for entry of the judgment and attorney's fees, and buyer moved the court for a JNOV or a new trial and attorney's fees. The trial court ordered entry of the judgment and denied buyer's motions. As to attorney's fees, the court denied an award to buyer and granted Potter a much reduced amount.

Several weeks later, buyer moved for a *Schwartz* hearing, alleging that the jury's failure to award damages resulting from the misrepresentation was due to a misunderstanding by the jurors of the special verdict. The trial court refused to grant a *Schwartz* hearing based on the lack of allegations of juror misconduct.

Buyer filed three separate notices of appeal, and Potter filed a notice of review. The appeals were consolidated.

## ISSUES

1. Did the trial court abuse its discretion in refusing to grant a new trial?

2. Did the trial court abuse its discretion in its award of attorney's fees?

## ANALYSIS

■ 1. In determining whether to grant a new trial, the trial court, which is in the best position to balance the interests of justice, is vested with broad discretion. *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 408 (Minn.1981). In the ordinary case, the special verdict is liberally construed to harmonize the answers in order to effectuate the intent of the jury. *Bellon v. Klawitter*, 323 N.W.2d 735, 736 (Minn.1982) (citing *Reese v. Henke*, 277 Minn. 151, 155, 152 N.W.2d 63, 66 (1967); *Strauss v. Waseca Village Bowl*, 378 N.W.2d 131, 133 (Minn.Ct.App.1985). However, the trial court's decision can be overridden where a manifest injustice has been done. *Gardner v. Germain*, 264 Minn. 61, 63, 117 N.W.2d 759, 761 (1962); *Siemers v. United Benefit Life Insurance Co.*, 246 Minn. 459, 461, 75 N.W.2d 605, 607 (1956).

In the present case, the special verdict form was divided into two parts. Part I, questions one through four, concerned Potter's claim on the promissory note. Part II, questions five through eight, concerned buyer's counterclaim for a set-off.

## PART I

1. Did William Mueller & Son, Inc., breach the March 25, 1983 Agreement to purchase Daniel Potter's shares of stock in Midwest Bean Company? (Answer yes or no.)
   YES
2. Is Daniel Potter entitled to recover damages in addition to the principal and interest due under the promissory note dated March 31, 1983? (Answer yes or no.)
   YES
3. What is the total amount of additional damages which Plaintiff, Daniel Potter, is entitled to recover from William Mueller & Son, Inc.? (Insert amount.)
   $37,573.00
4. Is Daniel Potter entitled to director fees and salary from Midwest Bean Co. for the period from March 25, 1983 to April 22, 1983? (Answer yes or no.)
   YES

## PART II

5. If you find the assets were misrepresented on the January 31, 1983 Financial Statement of Midwest Bean Co., state the amount by which the assets were misrepresented. (Insert amount.)

$1,038,965.00

6. Was the misrepresentation of assets in the January 31, 1983 Financial Statement a material misrepresentation? (Answer yes or no.)

YES

7. Did William Mueller & Son, Inc. reasonably rely upon the misrepresentation of assets in the January 31, 1983 Financial Statement of Midwest Bean Co. when it purchased Daniel Potter's stock? (Answer yes or no.)

YES

8. Did William Mueller & Son, Inc. incur damages resulting from the misrepresentation of assets in the January 31, 1983 Financial Statement of Midwest Bean Co.? (Answer yes or no.)

NO

Buyer's counterclaim was based entirely on the parties' purchase agreement. That agreement provided:

The sellers jointly and severally agree to and shall upon demand indemnify the BUYER and COMPANY, their successors and assigns in respect of:

* * * * * *

(c) Any *damage* or *deficiency* resulting from any material misrepresentation, breach of warranty, or nonfulfillment of any agreement on the part of the SELLERS under this Agreement, or from any material misrepresentation in or omission from any certificate or other instrument furnished or to be furnished under the terms of the Agreement.

(Emphasis added.)

The fifth question (first question under part II) of the special verdict—whether the assets were misrepresented and the amount of the misrepresentation—was answered with a figure of $1,038,965. The sixth question—whether the misrepresentation was material—was answered in the affirmative. The seventh question— whether buyer reasonably relied on the misrepresentation—was also answered in the affirmative. But the eighth question— whether buyer incurred damages resulting from the deficiency—was answered in the negative.

On the face of it, these special verdict questions are confusing. It was unnecessary for the jury to state an amount in question five once they found that there was a misrepresentation. The purchase agreement provided for indemnification only for any damage or deficiency *resulting from* a material misrepresentation. On the other hand, if the jury had found damages in question eight, it would then have been necessary to ask a ninth question regarding the amount of the damages or deficiency resulting from the misrepresentation. Finally, question seven concerning buyer's reliance has no relevance in light of the purchase agreement which does not require reliance.

This confusion was not cleared up by the trial court's instructions. Other than boiler plate instructions and a reading of the questions, the transcript contains only two and one-half pages of instructions relating to questions five through eight. The court instructed:

If you determine that the assets of Midwest Bean Co. were overstated and that William Mueller & Son, Inc. has been damaged as a result thereof, you must determine the dollar amount of the damages sustained by William Mueller & Son, Inc., using the evidence presented in this case.

This instruction only added to the confusion. The jury was told it was to determine the amount of damages and yet no question in part II asked the jury to determine the amount of damages. Nor did the trial court instruct the jury on how the damages (or deficiency) were to be calculated.

The court then further instructed the jury:

If you find the assets were misrepresented the amount you are asked to determine in Question No. 5 is the entire amount by which the assets were misrepresented. It has already been determined that based on the proportionate shares of stock sold by Mr. Potter the amount of one-third of that total misrepresentation will be set off against the amount payable to Mr. Potter, if the defendants are entitled to a setoff.

This instruction suggested that Potter was to be awarded one-third of the answer to question five, a suggestion which does not comport with the language of the purchase agreement which was in the hands of

each juror. It added more confusion in that the court had suggested only moments before that the award was to be based on the *damages* sustained by the buyer. The trial court never clarified the relation between questions five and eight.

Finally, the first part (I) of the special verdict also added to the confusion. The first question asked whether buyer had breached the purchase agreement. The second question asked whether Potter was entitled to additional damages *beyond* the amounts in the promissory note. The third question asked the amount of the additional damages. This format was entirely different from the second part (II) of the special verdict where the only "amount" question was the very first question (question five). Based on the form of the first set of questions, the jury could have easily construed question eight to be asking only whether buyer was entitled to any *additional* damages. The jury instructions themselves would have reinforced this erroneous belief because of the suggestion that buyer would get a portion of whatever amount was inserted in response to question five.

Based on all this potential for jury confusion, this court determines that a manifest injustice would be done if buyer were denied a new trial. This result is not based upon any finding of irreconcilability, but rather is a recognition of the overwhelming potential for jury confusion presented by the special verdict form and the inadequate instructions.

2. We also remand on the issue of attorney's fees.

The promissory note provided that, upon default by buyer, Potter was entitled to "his entire costs of collection including but not limited to his reasonable attorney's fees, costs and disbursements." After trial, Potter submitted $66,836.50 in fees and $23,985.11 in costs. The trial court awarded "attorneys' fees for collection of the promissory note in an amount proportionate to the jury's verdict." After a motion for a specific amount, the court awarded fees of $9,393.25. In a letter to the attorneys, the trial court explained that $9,393.25 was 25% of the $37,573 that the jury awarded as damages. The trial court stated, "This was the amount of attorneys'

fees that I believe defendants in this case should be responsible for."

■ Such reasoning does not follow from the language in the promissory note. Potter is entitled to all reasonable fees and costs associated with the collection of amounts due under the note. This means he is also entitled to an award for defending the counterclaim because the counterclaim, if successful, would have reduced the amount he received under the note. However, Potter is not entitled to fees and costs for the claim for additional damages.

We add that, if buyer is successful upon remand with its counterclaim, then buyer, under the terms of the purchase agreement, is entitled to all attorney's fees and costs associated with both the counterclaim and its defense of Potter's claim on the promissory note. As with Potter, however, buyer is not entitled to fees or costs for any claim beyond "damage or deficiency resulting from any material misrepresentation."

## DECISION

We remand for a new trial on buyer's counterclaim and for reconsideration of attorney's fees.

Remanded.